T.C. Memo. 2014-222

UNITED STATES TAX COURT

ELIZABETH VARELA, Petitioner, AND JOSE M. LOZANO, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26759-11.                      Filed October 22, 2014.

        <u>Held</u>:  Over I's objection, P is relieved from joint and several
liability.

Troy C. Brown, for petitioner.

Jose M. Lozano, pro se.

Brock E. Whalen and Daniel N. Price, for respondent.

**[*2]**     MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  Petitioner and intervenor, married to each other during 2007 and 2008, made joint returns of income for those years.  For 2007, respondent determined a deficiency in their Federal income tax of $42,495 and an accuracy-related penalty of $8,499; for 2008 he determined a deficiency of $61,610 and an accuracy-related penalty of $12,322.  Although respondent addressed one notice of deficiency to both petitioner and intervenor, intervenor did not petition the Court for redetermination of the deficiencies and penalties, and, on account of that failure, respondent assessed those amounts against intervenor.  Petitioner, on the other hand, did timely petition the Court.  She assigned no error to the deficiencies and penalties respondent determined but did ask that we relieve her from liability for those amounts as a so-called innocent spouse.  As required in such a case, we caused intervenor to be notified of petitioner's request.  Intervenor timely gave notice of his objection to our granting petitioner her requested relief.  Respondent now agrees with petitioner that she is entitled to such relief.  The only issue for decision is petitioner's entitlement to relief from joint and several liability (innocent spouse relief).

**[*3]**   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

At the conclusion of the trial in this case (in which all parties participated), we directed the parties to file posttrial briefs.  See Rule 151(a).  Petitioner and respondent complied with our direction; intervenor did not.  While we might hold intervenor in default and dismiss his objections, see Rule 123(a), we will not do so.  Because intervenor raised certain factual issues in the notice of intervention and at trial, we make findings of fact and address the requirements of section 6015(b).

FINDINGS OF FACT

Residence

Petitioner resided in Texas at the time she filed the petition.  Intervenor shows his address as in Texas in his notice of intervention.

Marital History and Relationship

Petitioner and intervenor married in 1985, separated in July 2009, and divorced in 2012.  Previously, in 2003, petitioner began an action for divorce from intervenor, but she discontinued that action before it became complete.  Following that action, however, petitioner changed the way she and intervenor dealt with

[*4] their finances. Among those changes, petitioner and intervenor kept separate checking accounts and credit card accounts. Petitioner was employed during 2007 and 2008 and, during those years, she caused her employer to deposit her pay into her separate bank account. She and intervenor divided responsibility for their household expenses. Each paid from his (or her) separate funds those for which he (or she) was responsible. Petitioner paid for groceries, housekeeping, and expenses related to the couple's children, including clothing, tuition, and medical expenses, while intervenor paid such expenses as the mortgage, utilities, car payments, and auto insurance.

JL Unique Homes

JL Unique Homes, Inc. (JL Unique), is a Texas corporation, organized in 1996. During the years in issue, it was a C corporation, engaged in the business of building homes. It has issued no formal stock certificates or other records reflecting ownership of the corporation. Intervenor, its sole shareholder, was its president, and he operated and managed the company on a daily basis. Initially, petitioner was listed as a director and an incorporator of the company. She has not, however, performed any services as a director. Petitioner was not employed by JL Unique. During the years in issue, petitioner's only contribution to the

[*5] company was to assist a newly hired office manager in organizing the company's paperwork. She has received no dividend from JL Unique.

Intervenor paid his share of household and other expenses out of JL Unique's corporate accounts (which payments, in part, gave rise to the deficiencies in tax respondent determined). Petitioner did not have access to those accounts or to the corporation's books and records. She did not learn of intervenor's withdrawal of funds from the corporation until 2010, during the divorce proceedings.

Returns

For 2007 and 2008, petitioner and intervenor made joint returns of income. Tracy Bristol, a certified public accountant who regularly performed tax services for petitioner, intervenor, and JL Unique, prepared those returns. She also prepared JL Unique's 2007 and 2008 returns.

To facilitate Ms. Bristol's preparation of the couple's tax returns, petitioner and intervenor each supplied Ms. Bristol with information relating to their respective income for the year. JL Unique's office manager also provided Ms. Bristol with information related to JL Unique's tax returns for 2007 and 2008. Petitioner never provided any information to Ms. Bristol relating to JL Unique's taxes although, in 2009, she contacted Martha Torres, the office manager of JL

**[*6]** Unique, in order to prompt her to provide the company's 2008 tax information to Ms. Bristol.

On their 2007 return, petitioner and intervenor reported, among other items, wages totaling $155,524, nonemployee compensation from JL Unique of $35,000, and a capital gain of $34,970. Attached to the return was a Schedule E, Supplemental Income and Loss, on which petitioner and intervenor reported losses totaling $29,786 in connection with nine rental properties.

On their 2008 return, petitioner and intervenor reported, among other items, wages totaling $145,489 and nonemployee compensation from JL Unique of $35,000. Attached to the return was a Schedule E on which petitioner and intervenor reported losses totaling $35,131 in connection with six rental properties.

Petitioner was not involved with the management of the Schedule E rental properties. Some were jointly owned by petitioner and intervenor. Intervenor and the employees of JL Unique managed those properties. Intervenor or his employees deposited rents into an account to which petitioner did not have access. Intervenor and employees of JL Unique had the information relating to the income and expenses associated with those properties, and petitioner did not have access to it.

**[*7]** <u>Respondent's Adjustments</u>

After examining petitioner and intervenor's 2007 and 2008 returns, respondent made positive adjustments of $162,582 and $263,344, respectively, to the income that they had reported; he made those adjustments on account of expenditures made from JL Unique's bank accounts that he determined constituted constructive dividends to intervenor. Respondent also made adjustments to the rents and expenses reported in connection with the Schedule E rental properties. The accuracy-related penalties were determined under section 6662 on account of negligence or a substantial understatement of income tax.

OPINION

I.      <u>Introduction</u>

As a general rule, spouses who make a joint return of income are jointly and severally liable for all taxes shown on the return or found to be owing. <u>See</u> sec. 6013(d)(3). In certain situations, however, a joint return filer can avoid such joint and several liability by qualifying for innocent spouse relief under section 6015. <u>See</u> sec. 6015(b), (c), (f). Section 6015 provides for three types of innocent spouse relief: (1) full or apportioned relief under section 6015(b), (2) proportionate tax relief for divorced or separated taxpayers under section 6015(c), and (3) equitable

[*8] relief under section 6015(f) when relief is unavailable under either section 6015(b) or (c).

In her petition, petitioner seeks relief under all three provisions. Respondent now agrees that petitioner is entitled to full relief under section 6015(b). Intervenor objects on the grounds that the understatements of tax were not solely attributable to intervenor and that petitioner knew or should have known of those understatements. As we discuss below, we will grant full relief.

II.    Analysis

Section 6015(b) provides:

> SEC. 6015(b). Procedures For Relief From Liability Applicable to All Joint Filers.--
>
>> (1) In general.--Under procedures prescribed by the Secretary, if--
>>
>>> (A) a joint return has been made for a taxable year;
>>>
>>> (B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;
>>>
>>> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement;
>>>
>>> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the

**[\*9]** deficiency in tax for such taxable year attributable to such understatement; and

> (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

> then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

Petitioner and intervenor filed joint returns for 2007 and 2008, and petitioner has made a timely election for innocent spouse relief.

Both returns contained understatements of tax attributable to constructive dividends from JL Unique and erroneous deductions for the Schedule E rental property expenses. The evidence shows, and we find, that all of those items are attributable to intervenor. Generally, an erroneous item is attributed to the individual whose activities gave rise to the item, without regard to the operation of community property laws. See sec. 1.6015-1(f)(1), Income Tax Regs. Joint ownership alone does not dictate whether an erroneous item is allocated to both spouses. Deihl v. Commissioner, T.C. Memo. 2012-176, 2012 WL 2361518, at \*7. Even where the requesting spouse is listed as a shareholder or a partner or signed investment documents, she may, at times, avoid an allocation of liability

[*10] where she does not actually participate in the investment or business activity.  Id.; see also Juell v. Commissioner, T.C. Memo. 2007-219 (declining to allocate understatements to requesting spouse who did not invest any funds in the partnership, attend any partnership meetings, or have access to any partnership funds).

Intervenor was the president of JL Unique and had sole access to the company's corporate bank accounts during 2007 and 2008.  Petitioner credibly testified that she was not employed by JL Unique, that she did not have access to the company's bank accounts during 2007 and 2008, and that her only contribution to the business of JL Unique during 2007 and 2008 was to provide an organizational system for the company's newly hired office manager.  And even though petitioner is listed as an incorporator and a director of JL Unique, she credibly testified that she never performed any services in that capacity.  The company never issued formal stock certificates or other records that reflect its ownership, and petitioner never received a formal dividend from the company.  We do not find intervenor credible to the extent that he testified in contradiction to petitioner.  We have found that intervenor was JL Unique's sole shareholder.  Section 316(a) defines a dividend as "any distribution of property made by a corporation to its shareholders" from earnings and profits.  A constructive

[*11] dividend arises where a corporation confers an economic benefit on a shareholder without the expectation of repayment, even though neither the corporation nor the shareholder intended a dividend. Welle v. Commissioner, 140 T.C. 420, 422 (2013). We see no basis to conclude that petitioner was either formally or informally a shareholder of JL Unique, and, thus, the erroneous omission of constructive dividends from petitioner and intervenor's 2007 and 2008 joint returns was not the omission of items attributable to her.

Similarly, petitioner was not involved with the management of the Schedule E properties and did not have access to the information about the expenses related to those properties. Although certain properties for which deductions were claimed were titled jointly in petitioner and intervenor's names, management of those properties was handled exclusively by intervenor or JL Unique. Tenants dealt with and paid rent to intervenor or his office, and the rents were deposited into an account to which petitioner lacked access. We conclude, then, that understatements arising from the Schedule E adjustments are attributable to intervenor alone, and not to petitioner.

We also find that petitioner neither knew nor had reason to know of the 2007 and 2008 understatements of tax. Following petitioner and intervenor's 2003 divorce proceedings, the couple separated their finances. They created and

**[*12]** maintained separate checking accounts, into which they each deposited their respective wages and from which they each paid their share of expenses. During that time, intervenor also paid personal expenses out of the bank accounts of JL Unique. Petitioner did not have access to either intervenor's or JL Unique's bank accounts and thus did not know that intervenor was withdrawing money from the company's accounts in 2007 and 2008 or that he was doing so without JL Unique's formally declaring a dividend. Intervenor testified that petitioner "knew where * * * [the money] was coming from." Certainly, petitioner knew that intervenor's funds originated from JL Unique, as intervenor worked for the company full time, but nothing in the record indicates that she was aware that the funds were withdrawn inappropriately or that intervenor failed to report them on their return. Petitioner was not involved in the company's bookkeeping. She did not provide any information for JL Unique to Ms. Bristol, nor did she review the company's records or tax returns. Rather, intervenor or one of his employees handled that information, and petitioner could reasonably have concluded that intervenor paid his portion of household expenses from the amounts reported on the joint returns.

Nor do we find that petitioner had knowledge of the understatement with respect to the Schedule E rental properties. Ms. Bristol testified that the relevant information was in the possession of and supplied by intervenor or one of JL

[*13] Unique's employees. Intervenor or his employees at JL Unique collected rent, dealt with tenants, and handled repairs and other expenses associated with the homes. The rents received from the rental properties were deposited into intervenor's own separate bank account or, at times, the bank account of JL Unique. Petitioner did not have access to any of the accounts into which such funds were deposited. Nor was she privy to information relating to the expenses of the Schedule E properties; she did not have knowledge of the items for which expense deductions were claimed on the returns. She did not provide any information concerning the Schedule E properties to Ms. Bristol.

Finally, section 6015(b)(1)(D) provides that innocent spouse relief is appropriate when, in the light of all the facts and circumstances, it is inequitable to hold the requesting spouse jointly and severally liable. Factors we consider include (i) whether there has been a significant benefit to the spouse claiming relief and (ii) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse. See Alt v. Commissioner, 119 T.C. 306, 314-315 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004). Intervenor concealed the fact that the withdrawn funds were inappropriately taken from JL Unique, and petitioner did not learn of intervenor's withdrawal of the funds until 2010, during the couple's

**[*14]** divorce proceedings.  Moreover, while the funds were used to pay household expenses for the family, we are convinced that petitioner did not receive a benefit that is traceable to the funds beyond ordinary support.

Petitioner has established that she is entitled to relief from joint and several liability pursuant to section 6015(b).  To reflect the foregoing,

<u>Decision will be entered for</u> <u>petitioner</u>.