T.C. Memo. 2014-238

UNITED STATES TAX COURT

ANDREA RAE DEMETER, Petitioner, AND JEFFREY A. DEMETER,
Intervenor <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8690-13.                    Filed November 24, 2014.

<u>AnnaMarie L. Mitchell</u>, for petitioner.

Jeffrey A. Demeter, pro se.

<u>Peter T. McCary</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6015(e)(1),[1] petitioner seeks review

of respondent's determination that she is not entitled to relief from joint and

_____

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the relevant times, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[*2] several liability for 2004, 2005, and 2006 with respect to the joint Federal income tax returns she filed with intervenor, her former spouse.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Florida at the time she filed the petition.

I. Background

Petitioner graduated from high school in 1988. Two years later she married intervenor. Together they had two children, one born in 1995 and one born in 1999.

Since 1994 intervenor has owned a home construction business, Sunshine Framing & Finishing, Inc. (Sunshine). Sunshine is an S corporation for Federal income tax purposes. Intervenor was Sunshine's only officer until April 28, 2008, when petitioner was added as a vice president. Petitioner sometimes helped intervenor with Sunshine's operations by making deposits, performing bank runs, or writing Sunshine's checks for him. She also helped with some of Sunshine's bookkeeping by faxing reports of employees' hours to a payroll service and typing up the specifications of Sunshine's houses. She was not paid for these services.

**[*3]** During the course of their marriage petitioner and intervenor had only one bank account. The account was in Sunshine's name,[2] but they used it for both Sunshine's expenses and their personal expenses. Petitioner and intervenor both had signatory authority over the account, but intervenor controlled the finances. Petitioner could look at bank statements and write checks for personal expenses but needed permission from intervenor to make purchases.

Petitioner was a stay-at-home mom in 2004 and for most of 2005. From 2005 to 2009 she worked part time as a substitute teacher and as a teacher's assistant. She was paid approximately $10 per hour. To become a teacher's assistant she earned a paraprofessional certificate, which was her only educational achievement beyond earning a high school diploma. She has never attended college, received technical or business training, or taken any courses in accounting or bookkeeping.

II.     Lifestyle

Petitioner and intervenor lived a fairly modest lifestyle. They averaged one weekend vacation a year during the relevant tax years and made only two major purchases during that time. First, petitioner and intervenor entered into a 30-year

---

[2] At one point, the bank account was in the name of Jeff Demeter d.b.a. Sunshine Framing & Finishing.

**[*4]** mortgage agreement for $360,000 on October 20, 2004, to purchase land and build a four-bedroom home. They saved money by doing some of the construction work themselves: Intervenor built the frame of the house, and petitioner landscaped the yard.

Less than a year later, petitioner and intervenor purchased a used boat and a used boat trailer. They purchased the boat on consignment "as is" with a broken bowlight and a broken stereo. They made a downpayment of approximately $16,000 but needed a loan for the remaining $10,000. Intervenor applied for a loan from American General Financial Services (American General), but his application was denied because he had already overextended his credit. American General accepted petitioner's loan application. Petitioner knew that American General had denied intervenor's application.

A.    Tax Return Preparation

On March 29, 2008, respondent received intervenor and petitioner's Forms 1040, U.S. Individual Income Tax Return, for 2004, 2005, and 2006. On Schedules E, Supplemental Income and Loss, Intervenor and petitioner reported that they received from Sunshine income of $113,123, $72,484, and $164,465 for

**[\*5]** 2004, 2005, and 2006, respectively.[3] They also reported $312 and $4,018 of income for 2005 and 2006, respectively, from petitioner's teaching.

Petitioner and intervenor hired a tax attorney, Ron Mulchi, to prepare the returns. Petitioner, however, never met with Mr. Mulchi, and she signed each of the returns on or around December 9, 2007, without reviewing them. Intervenor and petitioner failed to pay the tax shown as due on any of the returns, but petitioner was not aware that there were amounts due until she started receiving notices of intent to levy from respondent. When she confronted intervenor, he promised that he would obtain a loan to pay the tax liabilities in full.

B.     Money Troubles

Around 2008 Sunshine's business slowed, and petitioner and intervenor started having money problems. The mortgage on their house was foreclosed upon,[4] and they filed a petition under chapter 7 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Middle District of Florida. Their debts were discharged on October 9, 2008.

---

[3] Petitioner and intervenor inadvertently listed their income received from Sunshine on line 18, Farm income or (loss), on their 2006 Form 1040.

[4] Their house was eventually auctioned off in 2013.

**[*6]** C.    Divorce Proceedings

In 2008 petitioner and intervenor filed for divorce in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida (circuit court).  They were each represented by counsel.  Petitioner and intervenor signed a marital settlement agreement which was incorporated into the circuit court's October 7, 2009, final judgment.  The marital settlement agreement provided that intervenor would be responsible for child support, alimony, attorney's fees, court costs, and all past-due tax liabilities incurred during the course of the marriage.

Intervenor, however, failed to meet any of the financial obligations set out in the marital settlement agreement.  Around 2010 petitioner filed a motion for contempt in the circuit court in an attempt to collect from intervenor.  Around 2012 petitioner filed a second motion for contempt in the circuit court.  As part of those proceedings, intervenor signed the Affidavit for IRS Innocent Spouse Determination (innocent spouse affidavit) on April 30, 2012, reaffirming his duty to pay back taxes.  On August 16, 2012, the circuit court issued a final judgment against intervenor for his failure to pay over $30,000 to petitioner.

D.    Petitioner's Current Lifestyle

Petitioner now relies on food assistance and owns no assets.  Petitioner has been unemployed since 2010 and has not been required to file a tax return since

**[*7]** 2009 because of a lack of income. She currently lives with her two minor children and her boyfriend. Her boyfriend pays the rent and the utilities. She looked into eligibility for a Pell Grant to go back to school but could not receive a grant because of the back taxes due.

III.    Request for Innocent Spouse Relief

On April 20, 2011, petitioner filed Form 8857, Request for Innocent Spouse Relief. On January 16, 2013, respondent issued a final determination denying petitioner's request. On April 16, 2013, petitioner timely postmarked and sent by certified mail her petition to this Court seeking review of respondent's determination. On April 22, 2013, the Court received and filed the petition. However, after the case was docketed, respondent determined that it was appropriate to grant petitioner relief. Pursuant to section 6015(e)(4) and Rule 325, intervenor joined as a party in this case to oppose petitioner's request.

At the conclusion of the trial the Court ordered petitioner and respondent to file opening seriatim briefs and ordered intervenor to file an answering seriatim brief. Petitioner and respondent each filed their opening briefs, but intervenor failed to file an answering brief. While we could hold intervenor in default and dismiss his objections, we will not do so. See Rule 123(a). Because intervenor raised certain factual issues in the notice of intervention and at trial, we make

[*8] findings of fact and address the requirements for relief.  See Varela v.

Commissioner, T.C. Memo. 2014-222, at *3.

OPINION

In general, a spouse who files a joint Federal income tax return is jointly

and severally liable for the entire tax liability.  Sec. 6013(d)(3).  However, a

spouse may be relieved of joint and several liability under section 6015(f) if:

(1) taking into account all the facts and circumstances, it is inequitable to hold a

taxpayer liable for any unpaid tax; and (2) relief is not available to the spouse

under subsection (b) or (c).  Sec. 6015(f)(1) and (2).

Subsections (b) and (c) of section 6015 apply only in the case of "an

understatement of tax" or "any deficiency" in tax, respectively, and do not apply in

the case of underpayments of tax reported on joint tax returns.  Sec. 6015(b)(1)(B),

(c)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v.

Commissioner, 120 T.C. 62, 66 (2003).  Because petitioner seeks relief from an

underpayment of tax, she is not entitled to relief under section 6015(b) or (c) and

may look only to subsection (f) for relief from joint and several liability.

The Commissioner has published revenue procedures listing the factors that

are normally considered in determining whether section 6015(f) relief should be

granted.  See Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding

**[*9]** Rev. Proc. 2003-61, 2003-2 C.B. 296. We consider these factors in the light of the attendant facts and circumstances, but we are not bound by them. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, T.C. Memo. 2012-91, slip op. at 9-10.

In determining whether petitioner is entitled to section 6015(f) relief we apply a de novo standard of review as well as a de novo scope of review. See Porter v. Commissioner, 132 T.C. 203 (2009); Porter v. Commissioner, 130 T.C. 115 (2008); see also Commissioner v. Neal, 557 F.3d 1262 (11th Cir. 2009), aff'g T.C. Memo. 2005-201. Petitioner bears the burden of proving that she is entitled to relief. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004). We are persuaded by a preponderance of evidence. See, e.g., Knight v. Commissioner, T.C. Memo. 2010-242, slip op. at 6; Stergios v. Commissioner, T.C. Memo. 2009-15, slip op. at 9-11.

I.     Threshold Conditions for Granting Relief

The guidelines begin by establishing threshold requirements that, the Commissioner contends, must be satisfied before an equitable relief request may be considered. See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400. Those conditions are: (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting

**[\*10]** spouse under section 6015(b) or (c); (3) the claim for relief is timely filed;

(4) no assets were transferred between the spouses as part of a fraudulent scheme;

(5) the nonrequesting spouse did not transfer disqualified assets to the requesting

spouse; (6) the requesting spouse did not knowingly participate in the filing of a

fraudulent joint return; and (7) absent certain enumerated exceptions,[5] the tax

liability from which the requesting spouse seeks relief is attributable to an item of

the nonrequesting spouse. We find that petitioner has met the threshold conditions

for relief.

## II.      Elements for Streamlined Determination

When the threshold conditions have been met, the guidelines allow a

requesting spouse to qualify for a streamlined determination of relief under section

6015(f), if all of the following conditions are met: (1) the requesting spouse is no

longer married to, is legally separated from, or has not been a member of the same

household as the other person at any time during the 12-month period ending on

the date the Service makes its determination; (2) the requesting spouse will suffer

---

[5] The IRS will consider granting relief regardless of whether the understatement, deficiency, or underpayment is attributable (in full or in part) to the requesting spouse if any of the following exceptions applies: (1) attribution due solely to the operation of community property law, (2) nominal ownership, (3) misappropriation of funds, (4) abuse, and (5) fraud committed by the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. 397, 399-400.

[*11] economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

Intervenor argues that petitioner knew of the tax liabilities and of Sunshine's falling income. Petitioner and respondent argue that petitioner had no knowledge or reason to know that intervenor would not or could not pay the tax liabilities. We find that petitioner had reason to know that intervenor would not or could not pay the tax liabilities reported on the joint tax returns. Accordingly, she does not qualify for a streamlined determination. See infra pp. 13-17.

III.    Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, the requesting spouse may still be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403. The guidelines list the following nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable

[*12] relief:  (1) marital status; (2) economic hardship; (3) in the case of underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health.  Id.

In making our determination under section 6015(f), we consider these factors as well as any other relevant factors.  No single factor is determinative, and all factors shall be considered and weighed appropriately.  See Pullins v. Commissioner, 136 T.C. at 448; Haigh v. Commissioner, T.C. Memo. 2009-140, slip op. at 34-35.

A.    Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of relief.  Rev. Proc. 2013-34, sec. 4.03(2)(a).  For purposes of this section a requesting spouse will be treated as being "no longer married to the nonrequesting spouse" if the requesting spouse is divorced from the nonrequesting spouse.  Id. sec. 4.03(2)(a)(i).  Petitioner and intervenor were divorced before she filed her request for innocent spouse relief.  Accordingly, this factor weighs in favor of granting relief to petitioner.

[*13] B.     Economic Hardship

Generally, economic hardship exists when collection of the tax liability will render the requesting spouse unable to meet basic living expenses. Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor may be neutral. Id.

Petitioner argues, and respondent agrees, that because she receives food assistance, is unemployed, owns no assets, takes care of two minor children, relies on her boyfriend to pay expenses, and has yet to receive child support and alimony payments from intervenor, denying her relief from joint and several liability will cause her to suffer economic hardship. We agree. Accordingly, this factor weighs in favor of relief.

C.     Knowledge or Reason To Know

In the case of an income tax liability that was properly reported but not paid, consideration is given to whether the requesting spouse knew or had reason to know as of the date the return was filed or the date the requesting spouse reasonably believed the return was filed that the nonrequesting spouse would not or could not pay the tax liability within a reasonable period after the filing of the return. Id. sec. 4.03(2)(c)(ii). This factor will weigh in favor of relief if the

**[*14]** requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. Id. This factor will weigh against relief if, on the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown as due on the return. Id. For example, if before the return was filed the requesting spouse knew of the nonrequesting spouse's prior financial difficulties or issues with creditors, then this factor will generally weigh against relief. Id.

In determining whether the requesting spouse had reason to know, consideration is given to various factors, including the requesting spouse's: (1) level of education (2) degree of involvement in the activity generating the income tax liability, (3) involvement in business and household financial matters, and (4) business or financial expertise. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

At trial intervenor argued that petitioner knew of the tax liabilities and of Sunshine's falling income. On brief petitioner makes two arguments: (1) she had no knowledge or reason to know that intervenor would not pay the tax liabilities, and (2) even if we find that she knew or had knowledge, intervenor's financial control allows a favorable determination for her. On brief respondent

[*15] makes three arguments: (1) petitioner did not know of the underpayments, (2) petitioner did not have reason to know of the underpayments when she signed the returns, and (3) even if petitioner knew or should have known of the underpayments when signing the returns, she reasonably believed that intervenor would pay the liabilities.

Because petitioner did not review the returns when she signed them, we reject respondent's argument that petitioner did not know or have reason to know about the underpayments. We impute to a taxpayer knowledge of what she could have gleaned from the tax returns she signed if she had taken the time to review them. Pullins v. Commissioner, 136 T.C. at 444.

As for petitioner's and respondent's argument that petitioner had no reason to know intervenor would not pay the tax liabilities, we consider the factors set forth in Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii). Some factors weigh in favor of petitioner: she graduated from high school but has not taken any college courses or financial courses; her teaching wages in 2005 contributed less than 1% of the total income reported on the year's return and in 2006 contributed approximately 2% of the total income reported on the year's return; she did not receive any income from Sunshine; and she did not meet with the tax attorney who prepared the tax returns for the relevant years.

[*16] On the other hand, petitioner participated in some of Sunshine's activities and in some household financial matters. She and intervenor maintained a single bank account, which they used for both personal expenses and Sunshine's expenses. She had access to previous bank statements and could go to the bank, deposit checks, and write checks for both Sunshine's expenses and personal expenses. She also knew that she and intervenor were having problems with money at the time they filed the tax returns. Petitioner stated on her Form 8857 that intervenor "didn't file * * * [the 2004, 2005, and 2006 returns] until a year later when * * * [we] started to have money problems."

Petitioner and respondent also argue that petitioner reasonably believed intervenor would pay the outstanding tax liabilities. We disagree. Petitioner testified that she learned about the tax liabilities only when respondent sent her notices of intent to levy. When she confronted intervenor, he promised that he would obtain a loan to pay the tax liabilities in full. However, petitioner was aware that intervenor had applied for a significantly smaller loan in 2005 and been denied. It is unlikely that intervenor could have successfully taken out a loan for

[*17] approximately $72,000[6] in 2008[7] when he had been denied a loan of $10,000 just a few years earlier.

We disagree with petitioner's final argument that intervenor's financial control allows this factor to weigh in her favor even if she had knowledge. Petitioner could and should have been aware of the financial situation. Although petitioner needed to ask intervenor before making large purchases, she was able to pay everyday expenses.

On the basis of the facts and circumstances, we find that petitioner knew or had reason to know that intervenor would have difficulty paying the tax liabilities. Accordingly, we find that this factor weighs against relief.

D.    Legal Obligation

This factor will weigh in favor of relief if the nonrequesting spouse has the sole legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d). This factor will be neutral, however, if the requesting spouse knew or had reason to know, when

---

[6] This is the approximate pre-interest and pre-penalty total of the tax liabilities computed on the 2004, 2005, and 2006 tax returns.

[7] Petitioner and intervenor signed the 2004, 2005, and 2006 tax returns on December 9, 2007. Respondent received the returns on March 29, 2008.

**[*18]** entering into the settlement agreement, that the nonrequesting spouse would not pay the income tax liability.  Id.

Pursuant to the marital settlement agreement, intervenor must pay all past-due taxes and any tax liability that arose during the course of his marriage to petitioner.  Three years after the divorce, intervenor reaffirmed his duty to pay back taxes by signing the innocent spouse affidavit.

Intervenor argues that he does not have such a legal obligation because he signed the innocent spouse affidavit under duress.  We disagree.  The legal obligation factor requires us to look at the time when the spouses entered into the marital settlement agreement.  See id.  The marital settlement agreement created intervenor's obligation to pay the tax liabilities incurred during the course of the marriage, and both petitioner and intervenor were represented by counsel when they entered into the marital settlement agreement.  The fact that the circuit court later required intervenor to reaffirm his obligation to pay back taxes by signing the innocent spouse affidavit is not relevant here.

Petitioner and respondent argue that petitioner had no reason to know when entering into the marital settlement agreement that intervenor would not pay the income tax liabilities.  We agree.  Although petitioner and intervenor had experienced financial difficulty by the time they finalized their divorce in 2009,

[*19] the marital settlement agreement was the product of arm's-length negotiations. See Levy v. Commissioner, T.C. Memo. 2005-92, slip op. at 27-29 (finding that the legal obligation factor weighed in favor of the taxpayer, in part because each side was represented by an attorney in the divorce). Each party was represented by an attorney, and petitioner earnestly tried to recover from intervenor twice after the divorce was finalized. She reasonably relied on her attorney's advice when she entered into the martial settlement agreement. Accordingly, this factor weighs in favor of petitioner.

E.    Significant Benefit

This factor considers whether the requesting spouse received a significant benefit, beyond normal support, from the unpaid income tax liability. Rev. Proc. 2013-34, sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212.

Intervenor contends that petitioner received a significant benefit from the unpaid income tax liabilities because she lived a "lavish lifestyle" during the relevant years. We disagree. On the basis of the record before us, petitioner and intervenor did not have any unusual or lavish expenses during those years.

During the relevant tax years petitioner and intervenor made two major purchases together:  a house and a boat. Neither purchase was unusual or lavish.

**[*20]** First, petitioner and intervenor entered into a 30-year mortgage agreement to build a four-bedroom house. They worked on the house themselves; intervenor framed the house, and petitioner worked on the landscaping. Second, they purchased a used boat and a used boat trailer, and the boat was sold "as is." Intervenor and petitioner's 2004, 2005, and 2006 tax returns show adjusted gross income of $106,209, $67,726, and $160,545, respectively. Monthly payments for a house they worked on themselves and a used boat sold "as is" do not exceed the bounds of normal support for petitioner and intervenor's adjusted gross income.

In addition, petitioner and intervenor averaged one brief, weekend vacation a year. Considering the circumstances in the relevant tax years, petitioner benefited from the underpayments, but her benefits did not exceed normal support. Accordingly, we find that this factor weighs in favor of relief.

F.    Compliance With Income Tax Laws

This factor considers whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for years after the year for which relief is requested. Id. sec. 4.03(2)(f). If the requesting spouse is in compliance with the Federal income tax laws for the taxable years following a divorce from the nonrequesting spouse, then this factor will weigh in favor of relief. Id. sec. 4.03(2)(f)(i).

[*21] Petitioner and intervenor divorced in 2009. Petitioner has not been required to file a tax return since 2009 because of lack of income. Thus, she has complied with the Federal income tax laws for the years since the divorce. Accordingly, this factor weighs in favor of relief.

### G. Mental or Physical Health

There is no evidence that petitioner was in poor mental or physical health at any relevant time. Thus, this factor is neutral.

## IV. Conclusion

Five of the factors weigh in favor of granting petitioner relief, one is neutral, and one factor weighs against granting relief. We find that the equities lie in petitioner's favor and hold that she is entitled to relief from joint and several liability for 2004, 2005, and 2006 under section 6015(f).

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for petitioner.