T.C. Summary Opinion 2021-29

UNITED STATES TAX COURT

JESSICA LYNN GRADY a.k.a. JESSICA LYNN GANS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16411-17S.                    Filed August 17, 2021.

<u>Cynthia S. Agostini</u>, for petitioner.

<u>Timothy M. Peel</u>, for respondent.

SUMMARY OPINION

LEYDEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that Jessica Lynn Grady, a.k.a. Jessica Lynn Gans, was not entitled to relief from liability for underpayments of joint Federal income tax under section 6015(f) for the taxable years 2006, 2007, 2009, 2010, and 2011. Ms. Gans timely filed a petition for review of respondent's determination under section 6015(e).[2]  The sole issue for decision is whether Ms. Gans qualifies for relief under section 6015(f) from liability for the underpayment of joint Federal income tax for 2006, 2007, 2009, 2010, or 2011.  The Court holds that Ms. Gans is entitled to relief for each of the taxable years.

Background

Some of the facts have been stipulated and are so found.  The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.  Ms. Gans resided in California when she filed her petition.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Christopher Dickey, Ms. Gans' husband during the years in issue, did not file a notice of intervention in this case.

I.     <u>Marriage to Mr. Dickey and Ms. Gans' Health Problems</u>

In 1986 Ms. Gans graduated from high school and later completed some college courses.  Ms. Gans and Mr. Dickey began a relationship in 1995 and had a son in 1996.  They did not live together in 1997 and most of 1998.  They married sometime in September 1998.  During their marriage Mr. Dickey emotionally abused and neglected Ms. Gans and drank heavily.

Mr. Dickey refused to file the couple's 2001 joint Federal income tax return.  The record does not indicate whether Mr. Dickey had refused to file the couple's joint Federal income tax returns for prior years.  He worked on commission, and his income was unpredictable.  Ms. Gans was not aware that she could file a return as married filing separately.  Ms. Gans suffered a miscarriage in 2001.

In 2004 the family moved to Fresno, California, to accommodate Ms. Gans' job with an airline company.  During 2004 Mr. Dickey could not get a job.  The car he used was repossessed.  Ms. Gans was a co-signer on the loan for that car.  In 2004 Ms. Gans suffered another miscarriage.  Mr. Dickey did not visit her in the hospital when that happened, but her parents visited.

In 2005 Mr. Dickey moved the family to Vancouver, Washington, because he went into business with his brother in moving spas in that city.  Ms. Gans continued to work for the airline company.

Mr. Dickey did not file the couple's joint Federal income tax returns for 2004 and 2005, and he told Ms. Gans it was because his brother controlled the information. Ms. Gans pleaded with Mr. Dickey to get the information and file the tax returns.

During 2004 and 2005 Mr. Dickey drank heavily. Sometime during 2004 or 2005 Ms. Gans suffered from serious health problems that required surgery. She also became depressed. She later admitted to her parents that during this time she was suicidal because of the state of her marriage and the couple's financial situation.

Sometime in 2006 Ms. Gans left her job with the airline company. Her health continued to deteriorate. She was put under the care of a doctor, and it took several months for her to regain her strength. At the end of 2006 Ms. Gans begged Mr. Dickey to file their delinquent tax returns, and he told her he could not because his brother would not give him the necessary information. The couple filed a late 2006 joint Federal income tax return on December 15, 2007, showing a balance due of $10,586. Ms. Gans did not have access to Mr. Dickey's tax information and was afraid to press Mr. Dickey and his brother for it. Ms. Gans felt she was not able to refuse to sign the return.

During 2007 Ms. Gans was working at IKEA. Her health continued to decline, and she became more depressed. She continued to beg Mr. Dickey to file their delinquent tax returns and again he told her he could not because his brother would not give him the necessary information. Ms. Gans withdrew emotionally from Mr. Dickey and his family, and she began to think about divorcing Mr. Dickey. By the end of 2007 Ms. Gans became aware of Mr. Dickey's continued failure to file their joint Federal income tax returns for 2001 through 2005.

The couple continued to struggle financially. The couple filed their 2007 joint Federal income tax return late, on November 10, 2008, showing a balance due of $2,664.31. An accountant prepared that tax return. The Federal income tax liabilities are attributable to Mr. Dickey's income from his business. After Ms. Gans and Mr. Dickey filed their 2007 joint Federal income tax return, the Internal Revenue Service (IRS)[3] credited their 2007 account with a tax relief credit of $1,200 and another credit of $300 on November 17, 2008. After the IRS applied the credits, their balance remained due.

---

[3]The Court uses the term "Internal Revenue Service" or "IRS" to refer to administrative actions taken outside of these proceedings. The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

During 2008, 2009, and 2010 Ms. Gans continued to have multiple serious health problems.  During that time she believed that Mr. Dickey was working with an accountant to file their outstanding joint Federal income tax returns.

Sometime in 2008 Ms. Gans told Mr. Dickey that she and their son were leaving Washington, and they moved back to California.  Ms. Gans suffered an injury requiring surgery on April 4, 2008, which prevented her from working for periods of time during 2008.  Sometime in August 2008 Mr. Dickey joined Ms. Gans and their son in California and got a job in California.  Mr. Dickey's income varied as it was calculated on the basis of commissions.  Sometime in 2008 Ms. Gans began working in a physical therapy clinic.  The couple continued to struggle financially.  The couple timely filed their 2008 joint Federal income tax return and a credit from that return of $517 was applied against their 2002 Federal income tax liability.

In 2009 Ms. Gans insisted that Mr. Dickey go with her to a marriage counselor.  He went to one session with Ms. Gans, and during that session he was advised to get the Federal and State tax problems resolved.  During 2009 Ms. Gans and Mr. Dickey's son had substance abuse problems which continued through 2012.  In 2009 Ms. Gans was referred to a cardiac specialist.

In 2010 the couple experienced housing instability. Their landlord sold the house they were renting. The stress from the housing instability and their son's substance abuse problems exacerbated Ms. Gans' cardiac problems. Ms. Gans' cardiac problems had worsened, and in December 2010 she was hospitalized and had surgery. During 2010 Mr. Dickey withdrew emotionally from Ms. Gans and their son.

Sometime in 2011 Ms. Gans told Mr. Dickey that she would leave him if he did not get their outstanding tax returns completed and filed, and if they owed money he would need to set up a payment plan. Mr. Dickey continued to drink heavily during 2011, and often he was intoxicated when he returned from work. Also during 2011 their son continued to struggle with substance abuse. The couple filed their 2009 joint Federal income tax return late, on August 7, 2011, and their 2010 return timely, on April 15, 2011.

During 2012 Ms. Gans worked 45 to 60 hours a week and struggled to support herself and her son and to deal with his substance abuse. Mr. Dickey continued to drink. He would drink when he came home and fall asleep on the couch. The couple timely filed their 2011 joint Federal income tax return on April 15, 2012. Shortly after that Mr. Dickey moved out and left Ms. Gans stacks of unpaid bills to handle.

Ms. Gans filed her 2013 individual Federal income tax return, which was prepared by a tax return preparer. For the first time in her married life, she filed her tax return choosing the filing status of married filing separately. Since then, Ms. Gans has complied with her Federal income tax filing obligations. Neither Mr. Dickey nor Ms. Gans received any significant benefit from the failure to pay the outstanding tax liabilities for 2006, 2007, 2009, 2010, and 2011.

II.     Installment Agreements To Pay the Couple's Federal Income Tax Liabilities

Nothing in the record indicates that Ms. Gans and Mr. Dickey discussed the tax due when they filed their 2006, 2007, 2009, 2010, and 2011 joint Federal income tax returns. However, Ms. Gans was afraid to review or question the tax returns. Mr. Dickey repeatedly told Ms. Gans that he would file their tax returns and pay their tax debts, and she should not worry about it. He set up multiple installment agreements for the couple's Federal income tax liabilities. He made intermittent payments between September 2008 and June 2015, but none after that. Although Ms. Gans had access to the couple's joint bank accounts, she did not check them to see whether Mr. Dickey made the required installment agreement payments.

On January 2, 2008, Mr. Dickey requested an installment agreement that would pay the 2006 tax liability. The record indicates, but does not explain why,

that on that same date the installment agreement was removed. On August 4, 2008, another installment agreement was pending, and on August 7, 2008, an installment agreement was established for taxable years prior to the years at issue in this case (2001, 2002, and 2003, for $4,150.16, $3,670.78, and $822, respectively) and 2006. He also made another installment agreement with respect to the 2006 Federal income tax liability in 2011. The installment agreements established by Mr. Dickey, and the payments he made, are as follows:

| Year | Installment agreement established | Payment(s) |
|------|-----------------------------------|------------|
| 2006 | Aug. 7, 2008, and again on Oct. 21, 2011 | 2011: $200<br>2013: $1,390<br>2014: $7,140<br>2015: $3,570 |
| 2007 | Dec. 6, 2008, and again on Oct. 21, 2011 | None |
| 2009 | Oct. 21, 2011 | None |
| 2010 | Oct. 21, 2011 | None |
| 2011 | June 23, 2012 | None |

From 2011 to 2015 Mr. Dickey made more than $10,000 of installment payments.

III.    Ms. Gans' and Mr. Dickey's Divorce

Ms. Gans and Mr. Dickey divorced on November 25, 2015. The property order attachment to judgment required Mr. Dickey to be responsible for all "outstanding California or Oregon state and Federal taxes due between September 19, 1998, and January 1, 2013". Ms. Gans and Mr. Dickey did not transfer any assets to one another as part of a fraudulent scheme during or after the marriage. Mr. Dickey did not transfer to Ms. Gans any property or right to property for the principal purpose of avoiding tax or the payment of tax.

IV.    Ms. Gans' Ability To Pay the Federal Income Tax Liabilities

Ms. Gans married Clinton Gans in 2016. As of the date of the trial, he provided housing for her, paid the mortgage on the house he owns, and paid expenses for his two cars. Mr. Gans also helped to pay expenses for Ms. Gans' parents, who live with them. Ms. Gans' mother has Alzheimer's disease, and her father has leukemia and prostate cancer. Paying the expenses for the parents is a financial strain for Mr. Gans and Ms. Gans. Mr. Gans spends approximately $3,000 to $5,000 a month on the mortgage and expenses of Ms. Gans and her parents. Mr. Gans also planned on retiring sometime after the trial and estimated his income may then decrease by 30% to 50%. In 2018 Ms. Gans was employed

and had earned $14,190.52 at the time of the trial. The Court takes judicial notice[4] that the poverty level for one person in 2018 was $12,140,[5] and that 250% of the poverty level in 2018 was $30,350.

V.     Ms. Gans' Request for Relief Under Section 6015(f)

On March 16, 2016, the IRS received Ms. Gans' Form 8857, Request for Innocent Spouse Relief. Mr. Dickey did not oppose Ms. Gans' request. The IRS Cincinnati Centralized Innocent Spouse Operation preliminarily denied Ms. Gans' request for innocent spouse relief. Ms. Gans timely submitted Form 12509, Statement of Disagreement, dated November 20, 2016, requesting a hearing with the IRS Office of Appeals (Appeals Office). After its review the Appeals Office agreed with the preliminary determination to deny Ms. Gans' request for innocent spouse relief and issued a final determination letter on May 16, 2017, stating: "Our review of the facts and circumstances of your claim didn't show it would be unfair to hold you jointly responsible. You didn't have a reasonable expectation that the person you filed the joint return with would or could pay the tax."

---

[4]Fed. R. Evid. 201.

[5]Annual Update of the HHS Poverty Guidelines, 83 Fed. Reg. 2642 (Jan. 18, 2018).

Discussion

I.    Relief From Joint and Several Liability Under Section 6015(f)

This Court has jurisdiction to review respondent's denial of Ms. Gans' request for relief under section 6015. See sec. 6015(e)(1). Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3); see Butler v. Commissioner, 114 T.C. 276, 282 (2000). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.

Section 6015 provides various ways in which a spouse can be relieved of the joint and several income tax liability that results from the filing of a joint Federal income tax return, commonly referred to as "innocent spouse relief". If, as here, the tax due arises from an underpayment of tax, such relief is available only under section 6015(f). Pursuant to that section, the IRS may grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1)(A).

Ms. Gans, as the requesting spouse, bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v.

Commissioner, 132 T.C. 203, 210 (2009); Boyle v. Commissioner, T.C. Memo. 2016-87. The Court applies a de novo scope and standard of review in deciding whether a taxpayer is entitled to relief under section 6015(f).[6] See Wilson v. Commissioner, 705 F.3d 980, 993-994 (9th Cir. 2013), aff'g T.C. Memo. 2010-134; Porter v. Commissioner, 132 T.C. at 210.

The IRS has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f) in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400. Although the Court considers those procedures when reviewing the IRS' denial of section 6015(f) relief in cases such as this one, the Court is not bound by them; the Court's determination ultimately rests on an evaluation of all the facts and circumstances. See Sleeth v. Commissioner, 991 F.3d 1201, 1205 (11th Cir. 2021), aff'g T.C. Memo. 2019-138; Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Boyle v. Commissioner, at *9; Williams v. Commissioner, T.C. Memo. 2015-198; Sriram v. Commissioner, T.C. Memo. 2012-91.

---

[6]Sec. 6015(e)(7) was added effective July 1, 2019. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1203(b), 133 Stat. at 988 (2019). Because Ms. Gans filed her petition before July 1, 2019, sec. 6015(e)(7) does not apply in this case. See Sutherland v. Commissioner, 155 T.C. 95, 104 (2020).

II.    Threshold Conditions

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, lists seven threshold conditions, all of which a spouse must meet to qualify for relief under section 6015(f).  Respondent concedes that Ms. Gans meets these qualifying conditions for all years in issue.  Ms. Gans meets the threshold conditions to be considered for equitable relief under section 6015.

III.    Streamlined Relief for 2006

According to Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, if the threshold requirements have been satisfied, then the IRS considers whether the requesting spouse qualifies for streamlined relief.  The requesting spouse is eligible for streamlined relief under Rev. Proc. 2013-34, sec. 4.02, only in cases in which that spouse establishes that:  (1) on the date the IRS makes its determination, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) on the date the joint return was filed, the requesting spouse did not know or have reason to know the nonrequesting spouse would not or could not pay the underpayment of the tax reported on the joint return.  See, e.g., Contreras v. Commissioner, T.C. Memo. 2019-12; Sapp v. Commissioner, T.C.

Memo. 2015-143. The Court concludes that Ms. Gans meets the requirements for a streamlined determination for taxable year 2006.

First, Ms. Gans was no longer married to Mr. Dickey when the IRS issued its final determination. Second, Ms. Gans will suffer economic hardship if relief is not granted. As to the economic hardship factor, a requesting spouse will suffer economic hardship if payment of part or all of the tax liability "will cause the requesting spouse to be unable to pay reasonable basic living expenses." Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401; see sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. The determination as to what constitutes a reasonable amount for basic living expenses may vary with the circumstances of the individual taxpayer but will not include the maintenance of an affluent or luxurious lifestyle. Sec. 301.6343-1(b)(4)(i), Proced. & Admin Regs. The requesting spouse must introduce evidence at trial supporting her claim that she will suffer economic hardship. Johnson v. Commissioner, T.C. Memo. 2014-240, at *15 (citing Pullins v. Commissioner, 136 T.C. at 446-447). As discussed in more detail infra, Ms. Gans will suffer economic hardship if relief is not granted. Both Ms. Gans and Mr. Gans provided testimony at trial that Ms. Gans would suffer economic hardship if required to pay the Federal income tax liabilities in issue.

Finally, Ms. Gans did not have reason to know that Mr. Dickey would not pay the 2006 joint Federal income tax liability. When the couple filed their 2006 joint Federal tax return, Mr. Dickey requested an installment agreement within 30 days after the return was filed that would apply to the 2006 tax liability. Therefore, the Court concludes that when Ms. Gans signed the 2006 joint Federal income tax return, she did not know or have reason to know that the underpayment would not be paid.

IV.    Facts and Circumstances Test for 2007, 2009, 2010, and 2011

Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, focuses the analysis on a number of factors, including, but not limited to: (a) marital status, (b) economic hardship, (c) knowledge, (d) legal obligations to pay the tax, (e) significant benefits reaped from the understatement, (f) subsequent compliance with income tax laws, and (g) mental or physical health. An additional factor the Court may consider when determining whether to grant relief is whether the nonrequesting spouse abused the requesting spouse. See id. sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402. A single factor is not determinative. Id.

A.    Marital Status

The marital status factor weighs in favor of relief when the requesting spouse is no longer married to the nonrequesting spouse. Id. sec. 4.03(2)(a).

Because Ms. Gans divorced Mr. Dickey in 2015, this factor weighs in favor of relief.

B.      Economic Hardship

Generally, for purposes of section 6015(f) economic hardship exists when collection of the tax liability will render the taxpayer unable to meet basic living expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b). The determination of whether a spouse will suffer economic hardship is based on rules similar to section 301.6343-1(b)(4), Proced. & Admin. Regs. Rev. Proc. 2013-34, sec. 4.03(2)(b). The facts and circumstances considered include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, and transportation; and (3) any extraordinary circumstances or other facts the taxpayer raises. See Wilson v. Commissioner, T.C. Memo. 2017-63, at *12; sec. 301.6343-1(b)(4), Proced. & Admin. Regs. A requesting spouse will suffer economic hardship, which weighs in favor of relief, if satisfaction of the tax liability will impair her ability to pay reasonable basic living expenses. See Wilson v. Commissioner, at *12; Rev. Proc. 2013-34, sec. 4.03(2); see also McKnight v. Commissioner, T.C. Memo. 2006-155, 2006 WL 2087750, at *8. This inquiry

takes into account the requesting spouse's income, expenses, and assets. Rev. Proc. 2013-34, sec. 4.03(2)(b).

Ms. Gans testified that she was employed and had earned $14,190.52 in 2018 at the time of the trial. The Court has taken judicial notice that the poverty level for one person in 2018 was $12,140 and that 250% of the poverty level in 2018 was $30,350. See supra p. 11. Ms. Gans' yearly income at the time of trial was less than 250% of the poverty level. She did not own a car or a house. Rather, she lived with her elderly and sick parents and her then husband, Mr. Gans, who owned the house she lived in and the cars she used.

Mr. Gans testified that he was nearing retirement, and he estimated that his income would be decreasing substantially in the near future.

The Court concludes that Ms. Gans would experience economic hardship if she had to pay her joint Federal income tax liabilities for 2007, 2009, 2010, and 2011. Therefore, this factor weighs in favor of relief.

C.     Knowledge or Reason To Know

Typically, in the case of a reported, but unpaid, liability the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. See Washington v. Commissioner, 120

T.C. 137, 151 (2003); see also Feldman v. Commissioner, T.C. Memo. 2003-201, aff'd, 152 F. App'x 622 (9th Cir. 2005).

The general rule for unpaid liabilities is that the requesting spouse must establish that (1) when she signed the return, she had no knowledge or reason to know that the tax reported on the return would not be paid and (2) it was reasonable for her to believe that the nonrequesting spouse would pay the tax shown due.  Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401; see Morello v. Commissioner, T.C. Memo. 2004-181; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.  Further, Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), states that "a reasonable expectation of payment will be presumed if the spouses submitted a request for an installment agreement to pay the tax reported as due on the return."  To benefit from this presumption, the request for an installment agreement to pay the tax must be filed by the later of 90 days after the due date for payment of the tax, or 90 days after the return was filed.  Id.

By the time the joint Federal income tax returns for 2007, 2009, 2010, and 2011 were filed, Ms. Gans had reason to know that Mr. Dickey was not making the installment payments and that he had not made any arrangements to pay the liabilities shown on those tax returns.  Further, the fact that the couple continued to

experience financial difficulties meant that Ms. Gans should have known that Mr. Dickey would not pay the underpayments for those years. Thus for those years this factor weighs against relief.

D.     Legal Obligation

If the nonrequesting spouse had a legal obligation to pay the outstanding tax liability, apart from the income tax laws, this factor weighs in favor of relief; if the requesting spouse had the obligation, this factor weighs against relief. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. The Court finds that Mr. Dickey had a legal obligation to pay the outstanding joint Federal income tax liabilities. The divorce agreement between Ms. Gans and Mr. Dickey allocated the sole legal obligation to pay the tax liabilities from the marriage to him. Thus this factor weighs in favor of relief.

E.     Significant Benefit

If the requesting spouse receives a significant benefit from the understatement, this factor weighs against relief. Id. sec. 4.03(2)(e), 2013-43 I.R.B. at 402. If the unpaid tax is small so that neither spouse received a significant benefit, this factor is neutral. This Court, however, has treated the lack of a significant benefit as a factor favoring relief. See, e.g., Wang v. Commissioner, T.C. Memo. 2014-206, at *40. The Court finds this factor favors

relief because Ms. Gans did not receive any significant benefit from the failure to pay the outstanding joint Federal income tax liabilities.

F.      Compliance With Income Tax Laws

If the requesting spouse has made a good faith effort to comply with the income tax laws for the tax years following the tax year to which the request for relief relates, this factor weighs in favor of relief.  Rev. Proc. 2013-34, sec. 4.03(2)(f), 2013-43 I.R.B. at 402.  Ms. Gans has complied with the income tax laws for the years following her divorce.  Thus, this factor favors relief.

G.      Mental and Physical Health

"This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the return or returns for which the request for relief relates were filed * * * or at the time the requesting spouse requested relief."  Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403.  The Court also considers a taxpayer's mental and physical health at the time of trial.  See Pullins v. Commissioner, 136 T.C. at 454; Bell v. Commissioner, T.C. Memo. 2011-152.

Ms. Gans suffered from serious health problems during the times the joint Federal income tax returns were due and filed.  Ms. Gans' health problems lasted for multiple years and included numerous hospitalizations, surgeries, inability to work for extended periods, and struggles dealing with Mr. Dickey's heavy drinking

and their son's substance abuse. There is enough evidence in the record to conclude that Ms. Gans' health problems and her mental anguish with having to try to help their son made it very difficult for her to follow up with Mr. Dickey's multiple promises to take care of the couple's tax debts. Upon review of the facts, the Court finds that this factor weighs in favor of relief for the taxable years 2007, 2009, 2010, and 2011.

Conclusion

Considering the foregoing, and weighing the factors collectively, the Court concludes that Ms. Gans is entitled to relief from joint and several liability under section 6015(f) for 2006, 2007, 2009, 2010, and 2011. She qualifies for streamlined relief for 2006 and for relief under the facts and circumstances for 2007, 2009, 2010, and 2011. While her knowledge when she signed the 2007, 2009, 2010, and 2011 joint Federal income tax returns that the tax due would not be paid weighs against her entitlement to section 6015(f) relief, generally knowledge is only one of the factors and knowledge alone is not determinative of the Court's decision. See Minton v. Commissioner, T.C. Memo. 2018-15 (granting relief despite the taxpayer's admitting to knowledge of a balance owed); Demeter v. Commissioner, T.C. Memo. 2014-238 (granting relief despite finding that the taxpayer knew or had reason to know that her ex-husband would have difficulty

paying the tax liabilities).  Therefore, in considering Ms. Gans' entitlement to relief under section 6015(f), her knowledge is only one factor among many to be taken into account.  As the Court has noted, no one factor, in and of itself, is determinative.  See Stolkin v. Commissioner, T.C. Memo. 2008-211; Beatty v. Commissioner, T.C. Memo. 2007-167; Banderas v. Commissioner, T.C. Memo. 2007-129.

Factors that weigh in favor of relief include marital status (Ms. Gans was divorced at the time she filed the request for relief), economic hardship, Mr. Dickey's legal obligation to pay the joint income tax liabilities, lack of any significant benefit to Ms. Gans from the nonpayment of the joint income tax liabilities, Ms. Gans' compliance with the income tax laws, and the mental and emotional abuse she suffered and her serious health problems.

The Court has considered all the other contentions of the parties and, to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for petitioner.