T.C. Memo. 2018-15

UNITED STATES TAX COURT

CONNIE L. MINTON a.k.a. CONNIE L. KEENEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23416-15.                            Filed February 5, 2018.

Connie L. Minton, pro se.

D'Aun E. Clark, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, Judge:  Petitioner seeks review under section 6015(e)(1)[1] of

respondent's determination that she is not entitled to relief from joint and several

---

[1] Unless otherwise indicated all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[*2] liability for taxable year 2009 with respect to unpaid tax reported on the joint Federal income tax return she filed with her former spouse John Keeney.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated herein by this reference. Petitioner resided in Florida when she timely filed her petition.

Petitioner moved from Ohio to Florida in 2008 after the sudden death of her first husband. She had a house built in Florida and paid cash with proceeds from the sale of her Ohio home. There she met John Keeney, and they married in 2009. During their marriage and specifically in 2009 and 2010, Mr. Keeney operated an air conditioning business. Petitioner was listed as resident agent because Mr. Keeney claimed to have been a victim of identity theft, but her involvement in the business was minimal, and Mr. Keeney did not want her working outside the home. Petitioner attempted to pay bills for the business and the household and therefore was aware of Mr. Keeney's financial difficulties, which included insufficient funds to pay bills. Over the course of their relationship, however, Mr. Keeney repeatedly told petitioner that a big contract was coming for his business. For some time petitioner believed Mr. Keeney and even attended a meeting with a potential customer. However, the contract never materialized.

[*3]   In 2009 Mr. Keeney convinced petitioner to withdraw $30,000 from her section 401(k) retirement savings account (401(k) withdrawal) so that he could invest it in a money-making venture that later turned out to be worthless.  On June 17, 2010, petitioner and Mr. Keeney filed a joint Federal income tax return (joint return) reporting the 401(k) withdrawal.  The joint return also reported interest income of $183, business income of $8,327, and a capital loss of $3,000, for total income of $35,510.  The joint return reported a total tax liability of $5,335.  This amount included $1,177 in self employment tax (relating to Mr. Keeney's business) and $3,000 in tax on qualified plans (Form 5329) (the early withdrawal penalty for the 401(k) withdrawal).  Respondent made no adjustments to these items.  After payments and credits of $480, the joint return reported a balance due of $4,855.

At the time the joint return was filed petitioner knew that she and Mr. Keeney could not pay the tax liability reported on the joint return, but she believed Mr. Keeney's representations about the imminent big contract that would take care of the outstanding tax liability.  Subsequently, petitioner and Mr. Keeney attempted to resolve their financial difficulties through bankruptcy proceedings, but after she and Mr. Keeney separated she could not afford to continue the process.

**[*4]** Petitioner stated that she was verbally abused from early on in the marriage. The abuse grew worse throughout the marriage. After they were married, petitioner discovered that Mr. Keeney had been lying to her about his prior employment at a police department. She also learned that Mr. Keeney received cash payments for business transactions that he did not disclose to her. Petitioner finally divorced Mr. Keeney in 2013. When she asked Mr. Keeney to leave, he withdrew all funds from their joint bank account and made threats. Petitioner filed for a restraining order, but no action was taken. She now is employed and lives with her mother in a home that petitioner bought after paying off a $20,000 lien on her old home so that she could sell it.

On May 8, 2014, petitioner filed a Form 8857, Request for Innocent Spouse Relief. On June 29, 2015, the Internal Revenue Service (IRS) Appeals Office issued a final notice of determination to petitioner denying relief from joint and several liability under section 6015(f). A notice to Mr. Keeney of his right to intervene in this litigation was returned as "undeliverable". The Appeals Office denied petitioner's claim on the basis that she could not meet the threshold conditions for relief under Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399, because the tax was attributable to her. The Appeals officer's case memorandum noted the following: Petitioner was divorced, would not suffer economic

[*5] hardship, knew or had reason to know of the balance owed and did not have a reasonable expectation that the taxes would be paid, made a good-faith effort to be in compliance, and did not have health problems. The memo also noted that the divorce decree did not impose a legal obligation on petitioner or Mr. Keeney to pay the tax; nor did either petitioner or Mr. Keeney receive a significant benefit from the nonpayment of the liability.

On April 15, 2016, after selling her home, petitioner paid the $6,677 liability in full. (This amount included interest and penalties.) Therefore the issue before us is whether petitioner is entitled to equitable relief under section 6015(f) and (if so) whether she is entitled to a refund of any or all of this amount under section 6015(g).

OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A requesting spouse, however, may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). Sec. 6015(a). If relief is not available under subsection (b) or (c), a requesting spouse may seek equitable

[*6] relief under subsection (f). Because this case involves failure to pay tax shown on a return, rather than a deficiency, petitioner may be eligible for relief under section 6015(f) only. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).

Section 6015(f)(1) gives the Commissioner discretion to grant equitable relief from joint and several liability if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". This Court has jurisdiction to review respondent's denial of petitioner's request for equitable relief under section 6015(f). See sec. 6015(e)(1). In doing so, we apply a de novo standard of review, as well as a de novo scope of review. Porter v. Commissioner, 132 T.C. 203, 210 (2009). Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v. Commissioner, 132 T.C. at 210.

I. Threshold Conditions for Granting Relief

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f). We consider those guidelines but we are not bound to them; our determination ultimately rests

**[*7]** on an evaluation of all the facts and circumstances.  See Pullins v.

Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C.

at 210.

These procedures, set forth in Rev. Proc. 2013-34, sec. 4.01, outline seven

threshold conditions that a spouse must meet to qualify for relief under section

6015(f):  (1) the requesting spouse filed a joint return for the taxable year for

which relief is sought; (2) the relief is not available to the requesting spouse under

section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were

transferred between the spouses as part of a fraudulent scheme; (5) the

nonrequesting spouse did not transfer disqualified assets to the requesting spouse;

(6) the requesting spouse did not knowingly participate in the filing of a fraudulent

joint return; and (7) absent certain enumerated exceptions, the tax liability from

which the requesting spouse seeks relief is attributable to an item of the

nonrequesting spouse or an underpayment resulting from the nonrequesting

spouse's income (attribution rule).

We have no difficulty concluding that petitioner satisfied the first six

conditions on the record before us, and the Appeals officer did not raise

nonsatisfaction of those conditions in her analysis.  As to the seventh condition--

the attribution rule--we conclude that part of the liability is attributable to

**[*8]** petitioner's income because it arose from petitioner's 401(k) withdrawal. Therefore we must determine whether any exceptions to attribution would apply. Those exceptions are: (a) attribution due solely to the operation of community property law; (b) nominal ownership; (c) misappropriation of funds (the requesting spouse did not know or have reason to know that funds intended for payment of tax were misappropriated by the nonrequesting spouse); (d) abuse before the return was filed that affects the requesting spouse's ability to challenge the treatment of items on the return or question payment of any balance due; and (e) fraud committed by the nonrequesting spouse that is the reason for the erroneous item. Rev. Proc. 2013-34, sec. 4.01(7).

The last three exceptions are potentially applicable here. We consider them in turn. First, the record does not support a finding that funds intended to pay the outstanding liability were misappropriated. Although petitioner credibly testified that Mr. Keeney withheld cash from household accounts, she did not testify that he took funds intended to pay their Federal tax liability. Rather she explained that Mr. Keeney convinced her that he had business prospects that would enable them to pay the liability.

We have held that the abuse exception requires proof that, as a result of the abuse, the requesting spouse was unable to challenge the treatment of the item on

[*9] the return.  Deihl v. Commissioner, T.C. Memo. 2012-176, aff'd, 603 F. App'x 527 (9th Cir. 2015).  Petitioner credibly testified as to Mr. Keeney's misleading statements and manipulation throughout their marriage and his verbal abuse.  But the actions he took did not restrict her ability to challenge how items were reported on their joint return.  She withdrew the funds from her retirement account knowing that he intended to invest them in a money-making venture.  Mr. Keeney's duplicity as to the future success of this investment or his business does not constitute the type of abuse that warrants excusing her from the responsibility for tax on income from her own retirement account.

We reach a similar conclusion with respect to the fraud exception.  Rev. Proc. 2013-34, sec. 4.01(7)(e), provides an example of a wife who sells her husband's separately owned stock without his knowledge and deposits the funds into a bank account to which he has no access and their joint return does not report income from the sale.  The revenue procedure concludes that the husband is entitled to relief because the wife committed fraud with respect to the husband, and this fraud was the reason for the erroneous item on the return (the failure to report the income from the sale).  Id.  While we believe petitioner's testimony that Mr. Keeney misled her about business prospects, she was the one who withdrew the funds and knew that they would be invested and therefore should have known

**[*10]** that they could be lost. We therefore conclude that petitioner does not satisfy the threshold conditions as to her 401(k) withdrawal, and therefore she is not entitled to relief from joint and several liability as to the liability attributable to that withdrawal. While we recognize the duplicity of Mr. Keeney and the difficulties of the marriage, they are insufficient to overcome the fact that the liability relates to a withdrawal petitioner made freely (even if she was misled about the quality of the investment). Unfortunately the tax laws cannot right that wrong.

We reach a different answer with respect to the liability attributable to Mr. Keeney's business. Unlike respondent, we conclude that liability is not attributable to petitioner because petitioner's involvement in the business was nominal only. Therefore, we conclude that petitioner satisfies the threshold conditions for relief with respect to the liability (including self-employment tax) associated with the income from Mr. Keeney's business. Our remaining analysis is limited to that liability.

## II. Elements for Streamlined Determination

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is

[*11] divorced from the nonrequesting spouse, is legally separated from the nonrequesting spouse under State law, is a widow or widower and is not an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

We conclude that petitioner fails to qualify for a streamlined determination of relief. Petitioner has not indicated that she will suffer economic hardship if relief is not granted, and she has paid the liability already.

III. Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, the requesting spouse still may be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See id. sec. 4.03, 2013-43 I.R.B. at 400. The

[*12] following are nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief:  (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health.  Id., 2013-43 I.R.B. at 400-403.

We consult these guidelines when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances.  Molinet v. Commissioner, T.C. Memo. 2014-109; Sriram v. Commissioner, T.C. Memo. 2012-91; see Pullins v. Commissioner, 136 T.C. at 438-439; Porter v. Commissioner, 132 T.C. at 210.  The Appeals officer determined that only one of the factors weighed against relief, concluding that petitioner knew of the balance owed and did not have a reasonable expectation that the tax would be paid. Petitioner admits that she knew the balance was owed.  We therefore must determine whether petitioner had a reasonable expectation that the tax would be paid as the other factors favor relief or are neutral.

**[*13]** We have held consistently that a requesting spouse carries her burden of proof to establish that she reasonably believed her spouse would pay an outstanding liability where the requesting spouse is not involved in the family finances or sophisticated about them and the nonrequesting spouse had the income to make the payments. See Torrisi v. Commissioner, T.C. Memo. 2011-235 (holding that the requesting spouse's belief that the nonrequesting spouse would pay the tax liability was reasonable when the nonrequesting spouse's business was generating substantial income, the requesting spouse did not assist the nonrequesting spouse in paying all bills, and the nonrequesting spouse asked the requesting spouse to make a check payable to the IRS for a specific amount that was less than the total amount due); see also Waldron v. Commissioner, T.C. Memo. 2011-288 (holding that the requesting spouse reasonably believed the nonrequesting spouse would pay a portion of the unpaid tax liabilities at the time the return was signed because the nonrequesting spouse had made his share of monthly payments for the initial three years on an installment agreement entered into near the time the joint return was signed).

Conversely we have concluded that a requesting spouse had reason to know that the nonrequesting spouse would not pay when the requesting spouse handled the finances and the nonrequesting spouse lacked financial means. See Cutler v.

**[\*14]** <u>Commissioner</u>, T.C. Memo. 2013-119 (holding that the requesting spouse knew that the nonrequesting spouse found financial matters unpleasant and refused to deal with them and therefore the requesting spouse knew she had to prepare the returns and could not reasonably expect the nonrequesting spouse to pay the tax); <u>Yosinski v. Commissioner</u>, T.C. Memo. 2012-195 (holding it was not reasonable to believe the nonrequesting spouse would pay the tax when the nonrequesting spouse had no source of substantial income and the record did not indicate the nonrequesting spouse had any assets of substantial value in her own name); <u>Stolkin v. Commissioner</u>, T.C. Memo. 2008-211 (holding that the requesting spouse's knowledge of the couple's financial difficulties deprived the requesting spouse of reason to believe that the nonrequesting spouse would pay the tax liability).

We are convinced by petitioner's testimony that she believed the Federal tax liability would be paid out of the proceeds from the "big contract" that Mr. Keeney promised was coming. Given petitioner's lack of sophistication and her position in the marriage, and taking into account Mr. Keeney's duplicity and abuse, we also conclude that her belief was reasonable. Therefore, this factor weighs in favor of relief. Because respondent did not dispute whether the other factors favored relief

**[\*15]** or are neutral, we will not consider them further here. And because we find that this factor also favors relief, we conclude that relief is appropriate.

Evaluating all of the facts, we conclude that it would be inequitable to hold petitioner liable for any of the tax liability associated with Mr. Keeney's business because of petitioner's relative lack of sophistication and the roles of Mr. Keeney and petitioner in their marriage. Here we take into account petitioner's credible testimony that Mr. Keeney had convinced her about his business prospects, his duplicity throughout their marriage, and his verbal abuse. On this record it would not be equitable to require her to pay his liability. Therefore, we will grant petitioner relief from joint and several liability under section 6015(f) for the taxes associated with Mr. Keeney's business.

Because petitioner has already paid the liability, she may be entitled to a refund under section 6015(g)(1) to the extent not otherwise prohibited under section 6511 (and other sections not relevant to this case). See Washington v. Commissioner, 120 T.C. 137 (2003) (applying section 6015(f) to provide equitable relief and granting refund subject to limitations in section 6511). At trial counsel for respondent conceded that if we conclude that petitioner is not liable for any of the tax she had paid, the resulting overpayment would be refundable to her (or creditable against any other outstanding liability she has). We hold that she is

[*16] entitled to a refund of any tax paid that was attributable to the liability of Mr. Keeney's business.

## Conclusion

We sustain respondent's determination that petitioner is not entitled to relief from joint and several liability for taxable year 2014 with respect to the liability associated with her 401(k) withdrawal. We also hold that petitioner is entitled to relief from joint and several liability for the remaining liability attributable to Mr. Keeney's business.

We have considered all arguments made and facts presented in reaching our decision and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate decision will be entered.