T.C. Memo. 2018-115

UNITED STATES TAX COURT

RICK E. JACOBSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25348-15.                          Filed July 25, 2018.

Rick E. Jacobsen, pro se.

<u>Richard C. Grosenick</u> and Mark Krueger (student), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Pursuant to section 6015(e)(1),[1] petitioner seeks review of

respondent's determination that he is not entitled to relief from joint and several

liability under section 6015(b), (c), and (f) for 2010 and 2011 with respect to

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times.

[*2] Federal income tax returns that he jointly filed with his former spouse, Tina Lemmens.[2]  Petitioner seeks relief from those portions of the 2010 and 2011 tax liabilities arising from income Ms. Lemmens embezzled from her employer.[3]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated facts and exhibits are incorporated herein by this reference.  Petitioner resided in Wisconsin when he timely filed his petition.[4]

Petitioner and Ms. Lemmens were married at all times during the years in issue.  In 2014 Ms. Lemmens filed for divorce, and on May 5, 2015, their divorce became final.

---

[2]The petition also sought relief from joint and several liability for 2009.  Petitioner's 2009 Federal income tax liability, however, was discharged in his chapter 7 bankruptcy case before the Office of Appeals final determination was issued and he filed the petition in this case.  Respondent filed a motion to dismiss for lack of jurisdiction as to tax year 2009 that the Court granted on February 4, 2016.

[3]Ms. Lemmens was arrested for embezzlement in June 2011.  In January 2012 she was sentenced to incarceration and ordered to pay restitution of over $500,000.  In his petition, petitioner requested innocent spouse relief for all of the liabilities for the years in issue.  At trial he conceded that he is seeking relief only from the liabilities and accuracy-related penalties associated with the embezzlement income.

[4]On December 18, 2015, Ms. Lemmens filed a notice of intervention.  On March 31, 2017, she filed a motion to withdraw as intervenor, which the Court granted.

[*3] I.     Background

Petitioner holds an associate's degree but has no formal education in business, accounting, or finance.  In 2010 and 2011 petitioner was employed as a machine operator at a factory, and on his days off he inspected properties for financial institutions and insurance companies (home inspection business).  Petitioner's 12-hour shifts 14 days per month at his manufacturing job left him time to work on the home inspection business.

Ms. Lemmens, an accountant, was employed at a local blood bank during the years in issue until her termination in early 2011.  Ms. Lemmens managed the family's personal finances and those of the home inspection business.[5]  Before Ms. Lemmens' arrest, petitioner never participated in managing the family finances; he never reviewed bank or credit card statements or examined their personal or business finances.  Petitioner relied on Ms. Lemmens to handle the family finances because of her training as an accountant.

Petitioner deposited his wages in a personal checking account at Evergreen Credit Union.  Income from the home inspection business and Ms. Lemmens'

---

[5]Petitioner performed interior inspections, secured vacant properties, and performed minor repairs for which he occasionally incurred expenses.  Ms. Lemmens prepared the invoices for petitioner's work and the reimbursement requests for his expenses.

**[*4]** wages were deposited in a joint account petitioner had access to at Community First Credit Union. The home inspection business did not have a separate bank account. Clients' checks were addressed directly to Ms. Lemmens, and she deposited them into the joint account. Petitioner periodically withdrew funds from the joint account to cover his everyday living expenses.

In June 2011 Ms. Lemmens was arrested for embezzling funds from her employer. Ms. Lemmens embezzled an estimated $485,681 from her employer over several years, including the years in issue.[6] During that time period no lavish expenditures were made--the couple did not pay off their mortgage, petitioner continued to drive the same used car, and certain utilities were disconnected at the marital home for nonpayment during the years in issue. Petitioner was completely unaware of Ms. Lemmens' embezzlement scheme until her arrest. Ms. Lemmens was subsequently convicted of her crimes in November 2011 and sentenced in January 2012. Petitioner supported Ms. Lemmens through the criminal proceedings and the first year of her incarceration; their estrangement in 2013,

---

[6]Ms. Lemmens' duties at the blood bank included processing accounts payable and issuing the requisite checks to venders. Ms. Lemmens embezzled the funds by drafting checks to herself or adding large amounts of money to her paychecks and categorizing the amounts as reimbursements. Notably, the deposits of embezzled funds largely mirrored deposits of income from the home inspection business in quantity and amount.

[*5] however, led her to file for divorce.  Under the final divorce decree petitioner and Ms. Lemmens are each legally obligated to pay one-half of the 2010 and 2011 tax liabilities.  Petitioner, however, alleges he intended to agree only to pay one-half of the tax liabilities attributable to items other than the embezzlement income.

II.    Tax Returns and Deficiencies

For 2010 petitioner gave Ms. Lemmens his tax information.  She then gave his tax information along with her own to a paid preparer she hired to prepare the couple's joint income tax return (2010 return).  Petitioner and Ms. Lemmens reported adjusted gross income of $327,716, including wage income of $117,571, other income of $162,951, and business income of $1,173.  Petitioner and Ms. Lemmens claimed itemized deductions of $193,562, of which $161,951 was gambling losses.[7]  The 2010 return was filed before Ms. Lemmens' arrest in June 2011; petitioner did not see it before the paid preparer submitted it electronically to the Internal Revenue Service (IRS).

For 2011 petitioner provided his and Ms. Lemmens' tax information to the same paid preparer who had prepared the 2010 return to prepare their 2011 joint income tax return (2011 return).  The 2011 return reported adjusted gross income

[7]Oneida Casino's records indicate Ms. Lemmens had cash buy-ins totaling $301,304 and petitioner had cash buy-ins totaling $114,665 between 2008 and 2010.

**[*6]** of $114,251, including wage income of $58,606, other income specifically labeled "gambling winnings" of $11,508, and business income of $46,354. The couple claimed itemized deductions of $32,633. The 2011 return was timely filed in April 2012.

Sometime after Ms. Lemmens' trial the returns for 2010 and 2011 were examined. For both years some adjustments were attributable to the omitted embezzlement income and others were not. Petitioner seeks relief only from those items attributable to the omitted embezzlement income and associated accuracy-related penalties. See supra note 3.

Respondent proposed total net adjustments of $298,710.14 for 2010, of which $261,959.14 is attributable to the omitted embezzlement income. This adjustment created a deficiency of $103,247 and a section 6662(a) accuracy-related penalty of $20,649.40 for 2010.

Respondent proposed total net adjustments of $106,424.94 for 2011, of which $62,449.94 is attributable to the omitted embezzlement income. This adjustment created a deficiency of $25,912 and a section 6662(a) accuracy-related penalty of $5,182 for 2011.

[*7] III.     Petitioner's Request for Administrative Relief

On January 7, 2014, petitioner submitted to the IRS Form 8857, Request for Innocent Spouse Relief, seeking relief from joint and several liability for the years in issue.  Petitioner reported total monthly income of $2,929 consisting of wages of $2,800 and veterans disability payments of $129.  Petitioner reported total monthly expenses of $3,500.

On June 25, 2014, respondent made a preliminary determination that petitioner was entitled to full relief for the years in issue under section 6015(b). On July 23, 2014, Ms. Lemmens was notified of the preliminary decision and filed a statement of disagreement with respondent.  Respondent's Office of Appeals reconsidered petitioner's request and made a final determination that petitioner was ineligible for relief for the years in issue under section 6015(b), (c), and (f).

Petitioner and Ms. Lemmens' divorce proceedings and petitioner's claim for relief from joint and several liability were pending at the same time.  On March 14, 2015, petitioner signed the divorce agreement after Ms. Lemmens had appealed respondent's preliminary determination granting petitioner relief but before respondent had made a final determination denying relief.  Petitioner and Ms. Lemmens' divorce agreement stated that petitioner and Ms. Lemmens each agreed to pay one-half of the 2010 and 2011 tax liabilities, including the liabilities

**[\*8]** arising from the embezzlement income. Petitioner claims he agreed to pay one-half of the outstanding liabilities that did not include any portion of the liabilities arising from the embezzlement income.

Petitioner is a disabled veteran who continues to suffer from posttraumatic stress disorder (PTSD). As a result of Ms. Lemmens' arrest and conviction, the divorce, and his financial problems, petitioner suffered a mental breakdown. As of the time of trial petitioner was recovering from his mental health problems through medication and participation in a PTSD treatment program at a veterans hospital.

Petitioner has had four jobs and moved three times since filing his initial claim for relief. As of the time of trial petitioner was employed at a food packaging company earning $69,000 per year.

OPINION

Generally, married taxpayers may file joint Federal income tax returns with their spouses if they elect to do so. Sec. 6013. Section 6013(d)(3) provides that if a joint return is filed each spouse is jointly and severally liable for the entire tax due for that year. A requesting spouse may be relieved from joint and several liability under section 6015, however, if certain conditions are met.

**[*9]** Section 6015 provides three potential avenues to relief under subsections (b), (c), and (f). A requesting spouse who satisfies the conditions of section 6015(b) may be relieved of liability from an understatement of tax attributable to the other spouse. Similarly, a requesting spouse who satisfies the conditions of section 6015(c) may have his or her liability for a deficiency limited to the portion of the deficiency allocated to him or her under section 6015(d). Finally, the requesting spouse may be granted relief from any unpaid tax or any deficiency if relief is not available under section 6015(b) or (c) and it would be inequitable to hold the requesting spouse liable. Sec. 6015(f). The Court may determine whether petitioner is eligible for relief under section 6015(b), (c), or (f) for the years in issue.

I.     Relief Under Section 6015(b)

Section 6015(b)(1) provides that a requesting spouse shall be relieved of joint and several liability for a particular year if each of the following requirements is met: (A) a joint return was filed for the year in issue, (B) the return contains an understatement attributable to an erroneous item of the nonrequesting spouse, (C) the requesting spouse establishes that in signing the return he or she did not know and had no reason to know of the understatement, (D) it is inequitable to hold the requesting spouse liable for the deficiency

**[*10]** attributable to the understatement, and (E) the requesting spouse's claim for relief is timely.

Failure to meet a single one of these requirements precludes relief under section 6015(b). Alt v. Commissioner, 119 T.C. 306, 313 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004). Respondent does not dispute that petitioner filed joint returns with Ms. Lemmens for 2010 and 2011 or that petitioner's request was timely. Respondent also concedes that the embezzlement income is wholly attributable to Ms. Lemmens. Respondent argues, however, that petitioner has not satisfied the requirements of subparagraphs (C) and (D) of section 6015(b)(1). Therefore, petitioner bears the burden of establishing that he did not know or have reason to know of the understatements when the 2010 and 2011 returns were signed and that it is inequitable to hold him liable for the deficiencies attributable to the understatements.

A.    Section 6015(b)(1)(C)

Under section 6015(b)(1)(C) the requesting spouse must establish that in signing the return he or she did not know and did not have reason to know the return contained an understatement. Although petitioner did not physically sign the 2010 or 2011 return, he tacitly consented to the electronic filing of each return. See supra pp. 5-6. Therefore his knowledge, or lack thereof, may be determined as

**[*11]** of the date the returns were filed. See Reilly-Casey v. Commissioner, T.C. Memo. 2013-292, at *8 (citing Reifler v. Commissioner, T.C. Memo. 2013-258, at *15 (explaining the tacit consent rule)).

A requesting spouse has knowledge or reason to know of an understatement if he or she actually knew of the understatement or if a reasonable person in similar circumstances would have known of the understatement. Sec. 1.6015-2(c), Income Tax Regs. Under certain circumstances, however, a requesting spouse may receive partial relief if he or she satisfies every requirement except the knowledge requirement of section 6015(b)(1)(C). See sec. 6015(b)(2). Partial relief is available only if the requesting spouse establishes he or she did not know or had no reason to know the full extent of the understatement. Id. In such a case, the requesting spouse may be relieved only from liability attributable to the portion of the understatement of which he or she lacked knowledge.

### 1. Actual Knowledge

All the facts and circumstances must be considered when determining whether a requesting spouse had actual knowledge of an understatement. Sec. 1.6015-3(c)(2)(iv), Income Tax Regs. Factors indicative of actual knowledge include deliberate efforts by the requesting spouse to avoid learning about an erroneous item and joint ownership of the property that resulted in the erroneous

[*12] item.  Id.  Further, in omitted income cases, actual knowledge includes knowledge of the receipt of the income.  Id. subdiv. (i)(A).  Knowledge of the source of the income, however, is not sufficient to establish actual knowledge.  Id. subdiv. (iii).  Thus the fact that petitioner knew his wife was employed as an accountant at the blood bank does not establish actual knowledge of her embezzlement.

It is well established that in omitted income cases, the spouse's actual knowledge of the underlying transaction that produced the income is sufficient to preclude relief.  Cheshire v. Commissioner, 282 F.3d 326, 333 (5th Cir. 2002), aff'g 115 T.C. 183 (2000).  This Court has interpreted the standard to be an "actual and clear awareness" of the existence of the omitted item.  Id. at 337 (quoting Cheshire v. Commissioner, 115 T.C. at 195).  In embezzlement income cases, knowledge of the underlying transaction means knowledge of the embezzlement. Evans v. Commissioner, T.C. Memo. 2010-199 (finding that requesting spouse knew or had reason to know of understatement where nonrequesting spouse was being prosecuted for embezzlement when return was signed), aff'd, 507 F. App'x 645 (9th Cir. 2013).

The 2010 return was filed before Ms. Lemmens' arrest in June 2011.  As section 6015(b)(1)(C) refers to knowledge at the time the return was signed or

**[\*13]** filed, events occurring after the fact are irrelevant. Petitioner testified that he was not aware of Ms. Lemmens' embezzlement until the date of her arrest, after she was taken into custody. The Court finds petitioner to be highly credible and accepts his testimony. The Court finds that petitioner did not have actual knowledge of the embezzlement income at the time the 2010 return was filed. See Hepler v. Commissioner, T.C. Memo. 1990-490 (finding taxpayer lacked actual knowledge of spouse's embezzlement income on the basis of taxpayer's credible testimony).

The 2011 return was filed after Ms. Lemmens' conviction. The Court finds that petitioner did have actual knowledge of the embezzlement income when the 2011 return was timely filed in April 2012. Ms. Lemmens was arrested in June 2011, convicted in November 2011 of embezzling $485,681, and sentenced to incarceration in January 2012 and ordered to pay restitution. Therefore, as of the date the 2011 return was filed petitioner had actual knowledge of the embezzlement income and that it was not reported on the return. As petitioner knew of the understatement when the return was filed, he is not entitled to relief under section 6015(b) for 2011.

**[*14]**     2.     <u>Reason To Know</u>

The Court must now determine whether petitioner had reason to know of the understatement when the 2010 return was filed.  A requesting spouse has reason to know of an understatement if a reasonable person in similar circumstances would have known of the understatement.  Sec. 1.6015-2(c), Income Tax Regs.  The standard is not abstract, however, as the reasonably prudent taxpayer must be placed in the particular circumstances of the requesting spouse.  <u>Resser v. Commissioner</u>, 74 F.3d 1528, 1536 (7th Cir. 1996), <u>rev'g</u> T.C. Memo. 1994-241.

"Courts have interpreted the reason-to-know element to encompass two separate types of constructive knowledge."  <u>Greer v. Commissioner</u>, 595 F.3d 338, 345 (6th Cir. 2010), <u>aff'g</u> T.C. Memo. 2009-20.  First, a spouse may know facts sufficient to give him or her reason to know of an understatement reflected on the return.  <u>Id.</u>  Second, even if a spouse does not have reason to know of an understatement, the spouse may know facts sufficient to place him or her on notice of a possible understatement, giving rise to a duty of inquiry.  <u>Id.</u> (citing <u>Kistner v. Commissioner</u>, 18 F.3d 1521, 1525 (11th Cir. 1994), <u>rev'g</u> T.C. Memo. 1991-463, and <u>Price v. Commissioner</u>, 887 F.2d 959, 965 (9th Cir. 1989)).  Put another way, if a spouse has reason to know of a possible understatement, the spouse incurs a duty of inquiry.  <u>Resser v. Commissioner</u>, 74 F.3d at 1541.  A spouse has

**[*15]** constructive knowledge of an understatement if such a duty arises and it is not discharged. Id.

All the facts and circumstances are considered in determining whether a requesting spouse had reason to know of an understatement. Sec. 1.6015-2(c), Income Tax Regs. Price v. Commissioner, 887 F.2d 959, a decision predating section 6015(b) and the regulations thereunder, identified the following factors as relevant: (1) the requesting spouse's level of education; (2) the requesting spouse's involvement in the financial and business activity of the family; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit about the family's finances. Price v. Commissioner, 887 F.2d at 965. The U.S. Court of Appeals for the Seventh Circuit, to which this case is appealable absent a stipulation to the contrary, has endorsed the Price factors when determining whether a spouse had reason to know of an understatement. Resser v. Commissioner, 74 F.3d at 1536. Generally, the same factors are considered when determining whether a spouse had a duty of inquiry and whether that duty was discharged. Greer v. Commissioner, 595 F.3d at 348; Resser v. Commissioner, 74 F.3d at 1541.

**[\*16]** Regulations under section 6015(b) identify six additional, nonexhaustive factors that are relevant to the inquiry: (1) the nature of the item and the amount of the erroneous item relative to other items; (2) the couple's financial situation; (3) the requesting spouse's educational background and business experience; (4) the extent of the requesting spouse's participation in the activity that resulted in the erroneous item; (5) whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question; and (6) whether the erroneous item represented a departure from a recurring pattern reflected in prior years' returns. Sec. 1.6015-2(c), Income Tax Regs. Factors (2), (3), and (5) largely overlap with the Price factors laid out above.

### a. Education

Petitioner has an associate's degree and thus has some postsecondary education. "The cases are clear, however, that it is financial education, not education in general, that matters." Greer v. Commissioner, 595 F.3d at 348 (citing Reser v. Commissioner, 112 F.3d 1258, 1268 (5th Cir. 1999), aff'g in part, rev'g in part T.C. Memo. 1995-572). Thus, while petitioner has some postsecondary education, he does not have formal education in business, accounting, or finance. Additionally, petitioner's employment as a machine

[*17] operator and his home inspection business did not require him to acquire any financial skills. Thus, this factor favors petitioner.

### b.     Involvement in Financial Affairs

Ms. Lemmens was employed as an accountant before her termination and subsequent arrest for embezzlement. The record shows that petitioner's role in the couple's finances, if any, was limited. Although petitioner was active in the operations of the couple's home inspection business, he played no role in managing its finances. Ms. Lemmens had superior knowledge in these fields, and before her arrest petitioner had trusted her to take care of their financial affairs. Before Ms. Lemmens' arrest, petitioner's involvement had consisted of providing his tax information to Ms. Lemmens, who then provided that information to a paid preparer who prepared the couple's returns. Therefore, this factor favors petitioner.

### c.     Lavish or Unusual Expenditures

Aside from petitioner's and Ms. Lemmens' gambling, the embezzled funds did not increase their standard of living or result in any lavish expenditures. They did not pay off their mortgage, and petitioner continued to drive the same used car. In fact, certain utilities were disconnected for lack of payment during the years in issue. These facts would not have given petitioner reason to know of the

[*18] embezzlement income or created any duty to inquire. Petitioner and Ms. Lemmens did, however, gamble heavily at this time and claimed an itemized deduction for gambling losses of $161,951 for 2010, but they also reported $162,951 of other income--presumably losing almost as much as they won--and reported adjusted gross income of $327,716 for 2010.

Thus, though the couple gambled extensively, sometimes with their own money and sometimes with gambling winnings, the numbers are not unusual in light of their income and ultimate winnings. Petitioner testified that he would gamble $100 on a slot machine and play any winnings for several hours. Although he might win or lose thousands of dollars playing the slots, petitioner viewed it as having spent only the $100 he initially put in.

Petitioner attributed the availability of funds with which to gamble to their salaries and the success of the home inspection business. As petitioner trusted Ms. Lemmens to handle the family finances and had a general knowledge of their income, the gambling expenses when compared to the winnings would not have seemed lavish or unusual to a reasonable person in petitioner's circumstances. Petitioner testified that, aside from the gambling expenses, no lavish expenditures were made and that, on the basis of his knowledge of their wage and business income, the gambling expenses were not out of line given the couple's available

[*19] income.  The Court finds petitioner's testimony on this point credible.

Therefore, this factor also favors petitioner.

### d.      Nonrequesting Spouse's Evasiveness or Deceit

Petitioner was unaware of Ms. Lemmens' embezzlement until the day she

was arrested in June 2011.  Additionally, financial records show that Ms.

Lemmens deposited the embezzled funds into the joint account used for her wages

and the home inspection business.  Both the business income and the embezzled

funds were deposited via checks made out to Ms. Lemmens in amounts

indistinguishable from one another.  Ms. Lemmens also embezzled funds by

artificially increasing her paycheck.  Given the constant stream of deposits to and

withdrawals from the joint account of business income, wages, expenses and

reimbursements, only a detailed review of the financial records would have

revealed the embezzlement scheme.  As petitioner trusted Ms. Lemmens to handle

the family's finances because of her skills as an accountant, he had no reason to

conduct such a review before her arrest.  Therefore, this factor favors petitioner.

### e.      Nature and Amount of the Item

Regulations under section 6015 define an "item" as "that which is required

to be separately listed on an individual income tax return or any required

attachments.  Items include, but are not limited to, gross income, deductions,

[*20] credits, and basis." Sec. 1.6015-1(h)(3), Income Tax Regs. An "erroneous item" is defined as "any item resulting in an understatement or deficiency in tax to the extent that such item is omitted from, or improperly reported (including improperly characterized) on an individual tax return." Sec. 1.6015-1(h)(4), Income Tax Regs.

Respondent determined that embezzlement income of $261,959 was omitted from the 2010 return. Although that seems like a large amount of money when viewed as a whole, it is not a figure that would have been separately listed on a tax return. Ms. Lemmens' method of embezzlement made the possibility of detection by petitioner remote. When each deposit of embezzled funds is viewed as a separate transaction, giving rise to a separate item of income, however, the nature and amount of the embezzlement income is not outstanding. As Ms. Lemmens embezzled the funds in separate transactions over a several-year period via increased wages and deposits that were virtually indistinguishable from those received by the home inspection business, review of the financial statements showing the deposits would not have given petitioner reason to know of the embezzlement income or placed him on notice thereof. Therefore, this factor favors petitioner.

**[*21]**       f.       <u>Requesting Spouse's Participation in the Activity</u>

As addressed above, petitioner was unaware of Ms. Lemmens'

embezzlement scheme before her arrest and took no part in it.  Ms. Lemmens

appealed respondent's determination granting petitioner relief and was briefly a

party to this action as an intervenor.  In Ms. Lemmens' statement of disagreement

with respondent's preliminary grant of relief, she alleged petitioner was aware of

her embezzling but took no action because he was personally benefiting from the

embezzlement income.  Ms. Lemmens provided no proof of this allegation,

however, and voluntarily withdrew as intervenor in this case.  The Court gives

little weight to Ms. Lemmens' allegations.  Therefore, this factor favors petitioner.

       g.       <u>Departure From Prior Returns</u>

Ms. Lemmens was convicted of embezzling funds from her employer over

several years, including 2010 and 2011.  Respondent determined the embezzled

funds were omitted from income for 2009, 2010, and 2011, the only years for

which returns were examined.  Thus, it appears that income was consistently

omitted from their return each year.  To the extent this factor is relevant it favors

petitioner.

Examination of the relevant factors laid out above indicates that petitioner

did not know or have reason to know of the understatement attributable to the

[*22] omitted embezzlement income before June 2011. Nor do the factors indicate that petitioner had any duty of inquiry. Petitioner's education and career experience do not portray a financially sophisticated individual. Further, he did not control the household finances and did not participate in preparing the 2010 return beyond providing his tax information. Neither petitioner's lack of participation in the management of the household or business finances nor his lack of examination of financial records were attempts to avoid learning of the embezzlement income; rather, it was the result of his reliance on his spouse, a trained accountant.

Given Ms. Lemmens' skill as an accountant, petitioner's involvement in only the home inspection business' operations, his general knowledge of the couple's income, and the lack of lavish or unusual expenditures, a reasonable person in petitioner's shoes would not have had reason to know of the embezzlement income omitted from the 2010 return. Similarly, any duty of inquiry that may have existed is met by petitioner's reliance on Ms. Lemmens' skills as an accountant. Therefore, the Court finds that petitioner did not know or have reason to know of the embezzlement income omitted from the 2010 return.

[*23] B.     Section 6015(b)(1)(D)

For petitioner to receive relief under section 6015(b), it must also be determined that, taking into account all the facts and circumstances, it is inequitable to hold him liable for the portion of the deficiency attributable to the embezzlement income omitted from the 2010 return.  Sec. 6015(b)(1)(D).  The IRS has identified several factors it considers relevant to this inquiry, which are laid out in regulations under section 6015(b) and guidance issued under section 6015(f).  See sec. 1.6015-2(d), Income Tax Regs.; Rev. Proc. 2013-34, 2013-43 I.R.B. 397.  The Court may consult the factors set forth in the IRS guidance when reviewing the Commissioner's denial of relief on equitable grounds but is not bound to follow them.  See Pullins v. Commissioner, 136 T.C. 432, 439 (2011); Minton v. Commissioner, T.C. Memo. 2018-15, at *12.  Regulations under section 6015(b) identify the relevant factors as whether:  (1) the requesting spouse significantly benefited, directly or indirectly, from the understatement; (2) the nonrequesting spouse has deserted the requesting spouse; (3) the spouses are divorced or separated; and (4) the requesting spouse received a benefit from the understatement on the joint return.  Sec. 1.6015-2(d), Income Tax Regs.

The regulations also indicate that other factors identified as relevant when considering equitable relief under section 6015(f) may be applied.  Sec.

**[*24]** 1.6015-2(d), Income Tax Regs.  To this end, the Commissioner has identified the following factors as relevant when determining whether it would be inequitable to hold a requesting spouse liable under section 6015(f):  (1) the current marital status of the spouses, (2) whether the requesting spouse would suffer and economic hardship if relief were not granted, (3) whether the requesting spouse knew or had reason to know of the understatement, (4) whether either spouse has a legal obligation to pay the outstanding Federal income tax liability, (5) whether the requesting spouse significantly benefited from the understatement, (6) whether the requesting spouse has made a good faith effort to comply with the income tax laws in the years following the years for which relief is sought, and (7) whether the requesting spouse was in poor mental or physical health at the time the joint return was filed.  Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403.

        1.    <u>Significant Benefit</u>

Regulations under section 6015(b) define a significant benefit as any benefit in excess of normal support.  Sec. 1.6015-2(d), Income Tax Regs.  Transfers of property between the spouses may be evidence of a significant benefit.  <u>Id.</u>  This factor weighs against relief where the requesting spouse receives benefits in excess of normal support.  Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. at

[*25] 402. Guidance under section 6015(f) states that benefits in excess of normal support--including lavish expenditures or increases in the standard of living--are mitigated, however, where the nonrequesting spouse controlled the household or business finances, making this factor neutral. Rev. Proc. 2013-34, sec. 4.03(2)(e). Where the requesting spouse obtained little or no benefit and the nonrequesting spouse benefited significantly or the nonrequesting spouse benefited to the requesting spouse's detriment, this factor weighs in favor of relief. Id.

As discussed above, petitioner did not receive any lavish gifts or experience an increase in standard of living as a result of the embezzled income.[8] Further, any benefit petitioner may have obtained is negated by Ms. Lemmens' control of the household and business finances. Therefore, this factor weighs in favor of relief.

### 2. Marital Status

Equity favors relief where the requesting spouse has been abandoned by the nonrequesting spouse or the spouses are no longer married. Spouses are no longer married if they are divorced, legally separated, or have not been members of the same household for a specified period. Id. sec. 4.03(2)(a), 2013-43 I.R.B. at 400.

---

[8]Ms. Lemmens purchased a lawnmower for the family residence that she referred to as a gift. The Court does not deem the cost of a lawnmower to be a lavish gift, especially compared to the other funds she handled.

[*26] This factor is neutral if the spouses have remained married. As petitioner and Ms. Lemmens have been divorced since May 2015, this factor favors petitioner.

### 3. Economic Hardship

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet his or her reasonable basic living expenses. Id. sec. 403(2)(b), 2013-43 I.R.B. at 401. Where the requesting spouse's income exceeds 250% of the Federal poverty guidelines, this factor favors relief if monthly income exceeds reasonable basic living expenses by $300 or less. Id. At the time of trial petitioner had annual income of $69,000, exceeding 250% of the Federal poverty guidelines, and estimated monthly expenses of $3,500. Petitioner testified that his monthly expenses have increased since he reported the $3,500 estimate in his request for relief but provided no evidence to support his claim.

Petitioner's estimated expenses, however, do not account for any payment obligation arising from the 2010 or 2011 deficiency. Petitioner testified that he is currently unable to pay all of his monthly expenses and must pick and choose which creditors are paid each month. Respondent has determined a deficiency of $103,247 for 2010, of which approximately 85% is attributable to the

**[\*27]** embezzlement income. Thus, denying petitioner relief would result in an increase in his monthly expenses, depending on the payment arrangement to which petitioner and respondent agreed. While it is possible that denying petitioner relief would result in monthly payments that would cause his monthly expenses to exceed his monthly income, without more information the result is unclear. Therefore, this factor is neutral.

### 4. Knowledge

As the Court determined above that petitioner did not know or have reason to know of the embezzlement income omitted from the 2010 return, this factor favors petitioner.

### 5. Legal Obligation

This factor favors relief where the nonrequesting spouse has the sole obligation to pay an outstanding Federal tax liability under a binding divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor weighs against relief where the requesting spouse has the sole obligation for that tax liability under the agreement and is neutral where both spouses have an obligation to pay the outstanding liability under the agreement. As petitioner's 2015 divorce decree states that he and Ms.

[*28] Lemmens are each liable for one-half of the 2010 and 2011 Federal tax liabilities, this factor is neutral.[9]

### 6. Compliance

Respondent concedes that petitioner is currently in compliance with his Federal income tax obligations. Therefore, this factor favors petitioner.

### 7. Health

This factor may weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the returns in issue were filed or at the time the request for relief was made. Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403. Rev. Proc. 2013-34, sec. 4.03(2)(g) states that the IRS will consider the nature, extent, and duration of the requesting spouse's condition, including the ongoing economic impact of the illness. Petitioner is a disabled veteran who suffers from PTSD. Petitioner testified that the cumulative effect of Ms. Lemmens' arrest, the ensuing audit and bankruptcy, and his subsequent divorce caused him to have a mental breakdown that resulted in the loss of his job. Since that time petitioner has held four jobs and moved three times while dealing with his mental health problems. These difficulties have had a significant economic impact. Petitioner testified that

---

[9]The Court notes the unfortunate timing of petitioner's signing the agreement after respondent's preliminary determination granting relief but before respondent's final determination denying relief. See supra p. 7.

**[*29]** he currently participates in a PTSD treatment program at a veterans hospital and is finally beginning to recover from these events. Because petitioner was currently undergoing treatment at the time of trial, the Court finds that his mental health problems are ongoing. Therefore, this factor favors relief.

All of the factors considered either weigh in favor of relief or are neutral. Significantly, petitioner did not know or have reason to know of the omitted income and did not obtain a significant benefit from the income. After considering all the facts and circumstances, the Court finds that it would be inequitable to hold petitioner liable for the portions of the 2010 deficiency and the accuracy-related penalty attributable to the omitted embezzlement income. Therefore petitioner is entitled to relief from joint and several liability under section 6015(b) for 2010.

II.   Relief Under Section 6015(f)

The Court must now determine whether petitioner is entitled to relief under section 6015(f) for 2011.[10]  Section 6015(f) provides that a requesting spouse may

---

[10]Because the Court finds that petitioner had actual knowledge of the embezzlement income omitted from the 2011 return, petitioner is eligible for relief only under sec. 6015(f). Sec. 6015(c)(3)(C) provides that relief is unavailable under sec. 6015(c) for any portion of a deficiency the Secretary demonstrates the requesting spouse had actual knowledge of at the time he or she signed the return. Because the Court has found that petitioner had actual knowledge of

(continued...)

[*30] be granted relief if, under procedures prescribed by the Secretary, taking into account all the fact and circumstances, it is inequitable to hold the requesting spouse liable for the deficiency or a portion thereof. The factors the IRS considers relevant when making this determination were explained above and are not repeated here.[11] Again, the Court may consult these factors when reviewing the Commissioner's denial of relief on equitable grounds but is not bound to follow them. The Court's determination ultimately turns on an evaluation of all the facts and circumstances. See Pullins v. Commissioner, 136 T.C. at 438-439; Porter v. Commissioner, 132 T.C. 203, 210 (2009).

As stated supra p. 29, for 2010 all of the factors either favor petitioner or are neutral. For 2011 the analysis of each factor produces the same result except for the knowledge factor. Petitioner became aware of Ms. Lemmens' embezzlement scheme in June 2011 at the time of her arrest. He became aware of the total

---

[10](...continued)
embezzlement income omitted from the 2011 return, relief under sec. 6015(c) is unavailable. Further, because the Court has determined petitioner is not entitled to relief under sec. 6015(b) and (c), it may determine whether petitioner is entitled to relief under sec. 6015(f). See sec. 6015(f)(2).

[11]In making its determination, the IRS considers three factors that, if met, will result in a streamlined determination granting relief. See Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. 397, 400. It also considered these same factors when determining whether equitable relief is appropriate under Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400, so they are not addressed separately.

**[\*31]** amount of embezzlement income in January 2012 when Ms. Lemmens was sentenced and ordered to pay restitution of over $500,000. Petitioner had actual knowledge of the understatement of embezzlement income when the 2011 return was filed in April 2012. Additionally, while for previous years Ms. Lemmons had provided the couple's tax information to the paid preparer, petitioner provided his and Ms. Lemmens' tax information to the paid preparer to prepare the 2011 return. He chose not to inform the paid preparer of the embezzlement income for 2011.

Although the other factors for equitable relief either favor petitioner or are neutral, petitioner's knowledge of the embezzlement income and his involvement in preparing the 2011 return weigh too heavily against him to allow relief. After considering all of the facts and circumstances, the Court finds that petitioner is not entitled to relief from joint and several liability under section 6015(f) for 2011.

III.    Conclusion

The Court finds that petitioner is entitled to relief from joint and several liability under section 6015(b) for the amount of the liability attributable to the embezzlement income for 2010. The Court also finds that petitioner is not entitled to relief for 2011.

**[*32]** The Court has considered all the other arguments of the parties, and to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.